**Steven DOE and Margaret Doe, individually and as the natural guardians of Jane Doe and Jean Doe, minor children, Plaintiffs,**

**v.**

**HENNEPIN COUNTY; Hennepin County Community Services Department Social Services Division—Child Protection; Hennepin County Community Services Department Social Services Division—Child Protection—Acute Unit; Raymond Ahrens, Division Director, individually and in his official capacity; Milton Henry, Supervisor, individually and in his official capacity; Gail Guthrie, Child Protection Worker, individually and in her official capacity; Carolyn McHenry, Child Protection Worker, individually and in her official capacity; Judith DuPre, Legal Section Worker, in her official capacity; the City of Mound, Minnesota; Bruce Wold, Chief of the Mound Police, individually and in his official capacity; William Hudson, Sergeant of the Mound Police, individually and in his official capacity; and Mindy Mitnick, Defendants.**

Civ. No. 4–84–115.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 6, 1985.

As Amended Dec. 12, 1985.

Corey L. Gordon, Minneapolis, for plaintiffs.

Paul Donlin, and Alan Bradberg, Donlin & McBride, St. Paul, for defendant Mindy Mitnick.

Rolf E. Gilbertson, Maun, Green, Hayes, Simon, Johanneson & Brehl, St. Paul, for Mound defendants, but did not participate in the proceedings.

Marilyn J. Maloney, Asst. Co. Atty., Minneapolis, for Hennepin Co. defendants, but did not participate in the proceedings.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiffs Steven and Margaret Doe, individually and as the natural guardians of Jane and Jean Doe, minor children,[1] brought this action for damages and injunctive relief against Hennepin County, several county agencies, officials and employees, Mound Police officials, Adrian Yackley, and Mindy Mitnick. Plaintiffs allege violation of their civil rights and base their complaint on 42 U.S.C. § 1983 and various tort theories. On June 26, 1984, this court granted defendant Yackley's motion to dismiss the complaint against him, granted the Hennepin County defendants' motion for summary judgment on a 42 U.S.C. § 1985(3) count, denied the Hennepin County defendants' motion to dismiss or, for summary judgment in all other respects, and granted plaintiffs' request to amend their complaint. The matter is presently before the court on the motions of defendant Mindy Mitnick to dismiss or, in the alternative, for summary judgment. Also before the court is plaintiffs' motion for partial summary judgment determining

---

1. Due to the sensitive nature of this case, plaintiffs are proceeding under the assumed name of "Doe". See June 28, 1983 Order of District Court.

that defendant Mitnick acted under color of state law.

*Background*

The parties have submitted, and the court has considered, affidavits and certain exhibits. For the purposes of this motion for summary judgment, the court takes as true plaintiffs' factual assertions.

On December 21, 1982, sheriff's deputies and police officers went to the home of Steven and Margaret Doe and removed two of the Does' children, two-year-old Jane and five-year-old Jean. The Honorable Allen Oleisky, Judge of Minnesota District Court, had issued the warrant authorizing the childrens' removal on the basis of an Emergency Warrant, prepared by Hennepin County authorities, which alleged that the Doe parents sexually abused their children and involved them with drugs. Plaintiffs assert that the petition was distorted and false in a number of respects and that the investigation which preceded it was biased, dishonest, and contrary to state law.

On December 22, the Does and their counsel appeared at a Juvenile Court hearing. Adrian Yackley, the primary source of Hennepin County's evidence, was not present. The Does assert that other County witnesses gave misleading testimony. The Juvenile Court referee continued the emergency hold on the children. In the days following the Juvenile Court hearing, the Does deposed Yackley and his wife. The Does argue that Mrs. Yackley's testimony casts serious doubt on the veracity of her husband's allegations and that Yackley's own behavior at deposition suggested that he was distorting and possibly falsifying reports of sexual abuse.

On January 5, Hennepin County caseworker Richard Cronk went to the Doe home and interviewed the Does and their children. This appears to have been the first time a Hennepin County employee went to the Doe home and met with the family members. The Does assert that, based on his discussions with the Does and the interview of the children, Cronk felt the allegations against the Does were without foundation. They state that Cronk told

them the matter would be dropped. Plaintiffs allege that defendants, in particular Ahrens, attempted to convince Cronk to change his opinion in order to justify the actions defendants had already taken. They argue further that because Cronk refused to change his opinion, Hennepin County was ultimately forced to withdraw the petition and settled the case.

On January 6, 1983, the Juvenile Court was to hear the Does' appeal from its December 22 order. The Does allege that they and Cronk were surprised to discover that Hennepin County had that day filed a Dependency and Neglect Petition against the Does. The parties reached an agreement, however, whereby the Juvenile Court dismissed the Petition, the parents agreed to undergo regular counseling with defendant Mindy Mitnick, and the children were returned to their parents. Pursuant to this agreement, Judge Oleisky ordered the Does to consult with Mitnick. Plaintiffs admit they selected Mitnick's name from a list of court-approved psychologists, but they claim they entered into the agreement because they feared it was the only way to win their children's return. Plaintiffs also state that they felt a need for counseling to help their children recover from the trauma of being taken from their home. They now argue that Hennepin County's list included only biased psychologists.

After nine sessions with Mitnick, the Does sought to terminate counseling. The Does assert that Mitnick was "positive and encouraging ... and agreed that it was appropriate for [the] counseling sessions with her to end." Affidavit of Margaret Doe (plaintiff's exhibit A).

In a report to Cronk, dated April 12, 1983, Mitnick found "no information supporting the allegations of child abuse by Mr. Doe." Mitnick did, however, recommend that the matter be referred to Hennepin County Child Welfare to ensure "ongoing monitoring" of the Doe family. Mitnick based this recommendation on her observations during counseling sessions and several tests she administered to members of the Doe family. Memorandum to Rich-

ard Cronk from Mindy Mitnick (defendant's exhibit E). Plaintiffs assert that Mitnick's report included "gross distortions and preposterous conclusions based on innocuous incidents" intended to demonstrate pathology and justify continuing involvement in the Doe family's lives.

The Does' current psychologist, who has served as an expert witness in child abuse cases, charges that Mitnick improperly administered and incorrectly interpreted the Minnesota Multiphasic Personality Inventory (MMPI), on which she based much of her conclusion of family pathology. Deposition of Ralph C. Underwager, Ph.D. (plaintiff's exhibit B). He further finds that Mitnick misinterpreted the conduct of various Doe family members, labelled normal behavior inappropriate and pathological, and improperly relied on highly subjective lay assessments of behavior. Dr. Underwager asserts that Mitnick's report was "not based on sound psychological principles, exceeded the scope of an evaluation normally performed by a psychologist under the circumstances, and served as an investigative evaluation rather than a therapeutic counseling report."

On May 31, 1983, the Does notified Hennepin County of their intent to bring this litigation. Their attorney states that Cronk confirmed his intention to close the Doe file in a June 14 conversation. On June 27, 1983, defendant Milton Henry, Supervisor of Child Protection, wrote to the Does' attorney, stating that Cronk had "completed his services on [the] case" and that "[b]ecause of the results of the diagnostic evaluation by ... Mitnick ... and other factors that indicate the need for parental counseling" the Department was "considering the possibility of referring the case to Child Welfare for counseling." (Plaintiff's exhibit F.)

The Does then brought an unsuccessful motion to enjoin the County from continuing involvement in their family. Plaintiffs assert that Mitnick's reply reiterated her concerns regarding the Doe family, expressly basing them on the Does' "denial" of family problems and the "serious prob-

lems" suggested by the MMPIs. She also referred again to a previously mentioned incident which she considered extremely "problematic." Mitnick requested the "intake record" to enable her to determine "whether intervention should be required." (Letter of August 8, plaintiff's exhibit I).

On August 12, after meeting with counsel, Henry again wrote Mitnick, stating that he would send her the original intake record. (Plaintiff's exhibit K.) On the basis of that intake information, information which the Does have charged is deceptive and misstated, Mitnick expressed additional concerns about the Does. She noted, however, that the material did not reflect "any new information specifically related to abuse of children but more ... a pattern of minimization and denial found in abusive families as well as in other families." (Plaintiff's exhibit M.)

Plaintiffs argue that, while Mitnick found no evidence of sexual abuse, she acted to assist her co-workers and insulate them from liability by wrongfully interpreting psychological data to create the impression that the Doe family exhibited some psycho-pathological traits that would justify misinterpretation and concern on the part of the County defendants. Plaintiffs also allege that the Hennepin County defendants conspired to insulate themselves from a lawsuit arising from their actions. They claim the defendants sought to justify continued involvement of Hennepin County Child Protection in the lives of the Does, partly by procuring false psychological reports from Mitnick, despite all the evidence that the Doe file should be closed.

Plaintiffs assert that as a result of these activities of Mitnick and the other defendants, the Does suffered the threat of another traumatic family separation. Dr. Underwager states that their continued fear and distress has had grave and lasting effects on all of the plaintiffs.

*Discussion*

Plaintiffs base their § 1983 claim against Mitnick on two theories. They argue that she conspired with other defendants to cover up their earlier violations of the Does'

constitutional rights, thus violating the Does' right to seek redress of their grievances. Additionally, the plaintiffs argue that Mitnick acted and conspired to ensure that the County would remain involved in the Doe family's life, thus causing long term, serious psychic trauma to the family.

Defendant Mitnick seeks dismissal or summary judgment on the claims against her, arguing that she is entitled to either absolute or qualified immunity and that plaintiffs have failed to state a claim against her because they have failed to show state action or causation, both necessary elements of a § 1983 claim. Mitnick also argues that plaintiffs' allegations of conspiracy are vague and conclusory and should therefore be dismissed.

In passing upon a motion for summary judgment,[2] the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits. *Ralph's Distributing Co. v. AMF, Inc.*, 667 F.2d 670 (8th Cir.1981); *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir. 1980). Thus, Mitnick must establish her right to judgment as a matter of law; there must be no genuine issue of fact and no room for doubt or controversy.

■ Court-appointed therapists are entitled to absolute immunity for acts committed within the scope of their appointments. *See In Re Scott County Master Docket*, 618 F.Supp. 1534, 1552–54 (D.Minn.1985) (MacLaughlin, J.). *See also Lawyer v. Kernodle*, 721 F.2d 632 (8th Cir.1983) (citing *Burkes v. Callion*, 433 F.2d 318 (9th Cir.1970) (per curiam), *cert. denied*, 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971); *Bartlett v. Weimer*, 268 F.2d 860 (7th Cir.1959)). Absolute immunity pro-

tects important public interests, *see, e.g.*, *Briscoe v. Latlue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), but it is not without its costs, *id.* at 345, 103 S.Ct. at 1121. Psychologists and other experts would be reluctant to accept court appointments if they thereby opened themselves to liability for their actions in this official capacity.

■ Plaintiffs argue that Mitnick was not "appointed", but Judge Oleisky's Order of January 26, 1983 reflects her appointment pursuant to an agreement between the Does and Hennepin County. The Does' motive at the time does not alter Mitnick's status.[3]

■ Plaintiffs also argue that Mitnick exceeded the scope of her appointment by obtaining certain records after the Does stopped counseling with her, by revising an evaluation on the basis of those records, and by providing an opinion on the need for continued intervention in the Doe family. Judge Oleisky clearly ordered the Does to counsel with Mitnick and to sign releases necessary to allow the exchange of certain information between Mitnick and the Bureau of Social Services. Plaintiffs object to the manner in which Mitnick performed her court appointed duties. Plaintiffs' expert witness, Dr. Underwager, questions the psychological principles on which defendant's report is based and the scope of her evaluation. The plaintiffs have not, however, asserted facts showing that defendant exceeded the scope of Judge Oleisky's order. There is no showing that Mitnick was not functioning as a psychologist at all relevant times. Plaintiffs do not overcome Mitnick's immunity by asserting that she was not a good psychologist, or that she should have been a better psychologist.

---

2. The parties have submitted, and the court has considered, material outside the pleadings. The court must therefore consider this motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b)(6).

3. Plaintiffs' reliance on Judge McLaughlin's decision in the Scott County cases concerning *Bu-*

*chan* defendant DeVries is misplaced. There was no evidence that DeVries had been appointed by the court before she began meeting with plaintiffs' children; here it is clear that Mitnick was appointed by Judge Oliesky before she began meeting with the Does.

■ Plaintiffs agreed to participate in counseling with a psychologist and selected Mitnick from the list of available psychologists. Pursuant to their agreement she was officially appointed by Judge Oleisky, and it was in the scope of this capacity that she took the actions about which plaintiffs complain. On the record before the court defendant Mitnick has established her right to summary judgment as a matter of law.

Because of this resolution it is not necessary to reach the other issues raised by the parties.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The motion of Mindy Mitnick for summary judgment is granted, and plaintiffs' claims against her are dismissed.

2. Plaintiffs' motion for partial summary judgment is denied as moot.