**R. LeeRoy PETERSON, et al.,
Appellants,**

**v.**

**ST. CLOUD HOSPITAL, Defendant,**

**The St. Cloud Clinic of Internal Medicine, Ltd., et al., St. Cloud Pathologists, P.A., et al., Respondents.**

**No. C9–90–659.**

Court of Appeals of Minnesota.

Sept. 25, 1990.

Reed K. Mackenzie, Mackenzie & Hallberg, P.A., Minneapolis, for R. LeeRoy Peterson, et al.

Anthony M. Tarvestad, Quinlivan, Sherwood, Spellacy & Tarvestad, St. Cloud, for St. Cloud Clinic of Internal Medicine, Ltd., et al.

Barry G. Vermeer, Anne T. Johnson, Gislason, Dosland, Hunter & Malecki, Minnetonka, for St. Cloud Pathologists, P.A., et al.

Considered and decided by FOLEY, P.J., and KALITOWSKI and THOREEN,* JJ.

## OPINION

KALITOWSKI, Judge.

Appellants LeeRoy and Barbara Peterson appeal from the trial court's order granting summary judgment for respondents St. Cloud Pathologists and R.A. Murray, Jr. on the basis that appellants' claim was barred by the statute of limitations.

## FACTS

St. Cloud Pathologists is a corporation which provides St. Cloud Hospital with pathology services. It was formed by four pathologists, including Dr. R.A. Murray

In early November, 1986, appellant LeeRoy Peterson was referred to Dr. John Weitz, an internist practicing with the St. Cloud Clinic of Internal Medicine, after Mr.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Peterson's family practitioner found a nodule on Mr. Peterson's lung.

On November 20, 1986, a radiologist at St. Cloud Hospital performed a needle biopsy to obtain cells from Mr. Peterson's right lung. In this procedure, the radiologist inserted a needle into Mr. Peterson's lesion, and removed some sample cells of the tumor. From those cells, a cytotechnologist made slide smears and sent the smears to Dr. Murray for his examination. After reviewing the slides, Dr. Murray prepared the following report:

POSITIVE: There are a few clusters of small cells with hyperchromatic nuclei and scant cytoplasm—suggestive of small cell carcinoma.

Dr. Weitz based his subsequent diagnosis of small cell carcinoma on Dr. Murray's cytology report, among other factors.

On November 26, 1986, Dr. Weitz informed the Petersons of his diagnosis. He stated that small cell carcinoma could take Mr. Peterson's life within two to three months if he was not treated, while he could expect to live a year to a year and a half with treatment. The Petersons made a decision to go ahead with chemotherapy treatments at that meeting. LeeRoy Peterson began chemotherapy and radiation treatments on December 4, 1986.

In mid April, 1987, Dr. Weitz began to re-evaluate his diagnosis due to the fact that Mr. Peterson had not responded as expected to the chemotherapy or the radiation therapy. Dr. Weitz ordered a bronchial biopsy performed on the lesion. These specimens were also sent to Dr. Murray for his examination. After completing the evaluation, Dr. Murray made the following diagnosis:

Diagnosis: Biopsy, right upper lobe along nodule, exhibiting:—bronchial carcinoid tumor.

Treatment for carcinoid tumor would not include chemotherapy or radiation therapy. It might include surgery to remove the tumor or simply keeping watch over its growth. Mr. Peterson has been treated for the carcinoid tumor since April 18, 1987.

On December 2, 1988, the Petersons served a summons and complaint on St. Cloud Pathologists P.A. and Dr. Murray. The complaint states that Mr. Peterson was under the care of the respondents, as well as the hospital and Dr. Weitz, for evaluation, diagnosis and treatment of his lung lesion from at least November 20, 1986, through April 17, 1987. The complaint further alleges that defendants, collectively, misdiagnosed Mr. Peterson's lung lesion as small cell carcinoma and that as a direct result of defendants' negligence, Mr. Peterson "sustained serious injuries, including injuries caused by painful and debilitating medical treatment * * *."

On December 16, 1989, the district court granted summary judgment for Dr. Murray and St. Cloud Pathologists on the grounds that the two-year statute of limitations for medical malpractice actions barred the Petersons' cause of action against them. The trial court found that the termination of treatment rule did not apply to toll the statute of limitations with respect to Dr. Murray because he was not in a physician-patient relationship with Mr. Peterson. The court also found that even if the termination of treatment rule did apply, Dr. Murray's November 20, 1986, report fell within the single act exception to the rule. Finally, the trial court found no joint enterprise existed between Dr. Murray and St. Cloud Hospital.

On April 27, 1990, the trial court denied the Petersons' motion for reconsideration. The Petersons appeal from the judgment entered pursuant to the trial court's order granting summary judgment for respondents.

## ISSUES

1. Did a physician-patient relationship exist between respondent Dr. Murray and appellant LeeRoy Peterson?

2. Is the Petersons' cause of action against Dr. Murray and St. Cloud Pathologists barred because the action was not commenced within two years of the date the cause of action accrued?

## ANALYSIS

In a review of a summary judgment, this court must determine whether

there are any issues of material fact or whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota Hospitals & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). The evidence must be viewed in the light most favorable to the party against whom summary judgment was granted. *Abdallah, Inc. v. Martin,* 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

### I.

■ The first question we must address in a medical malpractice action is whether a physician-patient relationship existed. The trial court found that "it is not reasonable for [Mr. Peterson] to believe that someone he has never met, spoken with, nor personally consulted can be considered his physician." While it is true that Mr. Peterson had no direct contact with Dr. Murray, that in itself does not preclude a physician-patient relationship. We follow the rationale of the Indiana Court of Appeals which found a physician-patient relationship between a patient and a pathologist under facts similar to this case. *See Walters v. Rinker,* 520 N.E.2d 468 (Ind.Ct.App.1988).

In *Walters,* the plaintiff's treating physician requested Dr. Walters, a pathologist to examine a sample of the plaintiff's tumor. The plaintiff alleged the pathologist was negligent in his diagnosis of that tumor.

The Indiana Court of Appeals found that a physician-patient relationship existed between the plaintiff and Dr. Walters based on the consensual nature of their relationship.

[A] consensual relationship between a physician and a patient may exist where others have contracted with the physician on the patient's behalf. * * * The important fact in determining whether the relationship is a consensual one * * * is not who contracted for the service but whether it was contracted for with the express or implied consent of the patient or for his benefit. * * * Where * * * health care services are rendered on behalf of the patient and are done for the patient's benefit, a consensual physician-patient relationship exists for the purposes of medical malpractice.

*Walters,* 520 N.E.2d at 472.

It is clear that Dr. Weitz contracted with Dr. Murray, with either the express or implied consent of Mr. Peterson, for Mr. Peterson's benefit. Therefore, we hold that Dr. Murray and Mr. Peterson were in a consensual physician-patient relationship as a matter of law.

### II.

■ A medical malpractice action is barred if it is not commenced within two years of the date on which the cause of action accrues. Minn.Stat. §§ 541.01, 541.-07(1) (1988). A cause of action for negligence does not accrue until damage has resulted. *Goellner v. Butler,* 836 F.2d 426, 430 (8th Cir.1988). The Minnesota Supreme Court has stated:

Alleged negligence coupled with the alleged resulting damage is the gravamen in deciding the date when the cause of action accrues.

*Offerdahl v. University of Minnesota Hospitals and Clinics,* 426 N.W.2d 425, 429 (Minn.1988) (citing *Dalton v. Dow Chemical Co.,* 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968)). Therefore, the statute of limitations does not begin to run until damage has resulted from the alleged negligence. *Dalton,* 280 Minn. at 153, 158 N.W.2d at 584. In *Offerdahl,* the plaintiff had a Copper 7–IUD inserted on August 9, 1977. She was hospitalized on January 28, 1979, for Pelvic Inflamatory Disease (PID) related to the IUD. She filed suit against the doctors who inserted the IUD claiming they were negligent in the insertion. The supreme court held that Offerdahl's cause of action did not accrue until she was hospitalized for PID because that is when she suffered damage as a result of the doctor's alleged negligence. *Offerdahl,* 426 N.W.2d at 429.

In the present case, appellants did not suffer any damage until LeeRoy Peterson received the chemotherapy and radiation therapy treatments.

Respondents argue that appellants suffered some damage as of November 26, 1986, when Dr. Weitz informed appellants of his diagnosis. Under Minnesota law, however, appellants could not have brought a cause of action at this time. Presumably the claim would have been for negligent infliction of emotional distress. However, the Minnesota Supreme Court has consistently held that:

> [N]o cause of action exists for the negligent infliction of emotional distress absent either physical injury or physical danger to the plaintiff.

*Langeland v. Farmer's State Bank of Trimont,* 319 N.W.2d 26, 32 (Minn.1982). On November 26, 1986, LeeRoy Peterson had not suffered any physical injury and was not in any physical danger. Since appellants could not bring an action against respondents as of November 26, 1986, the appellants' cause of action could not accrue as of that date for statute of limitation purposes. The earliest appellant could have brought a cause of action against respondents was December 4, 1986, when Mr. Peterson received his first treatment for the small cell carcinoma.

Respondent argues that our holding is, in effect, an adoption of the "discovery of injury" rule. We disagree. Had the alleged negligent act been a failure to correctly diagnose and treat cancer, damages would have occurred, and a cause of action would have accrued, at the time of the misdiagnosis. *See Willette v. Mayo Foundation,* 458 N.W.2d 120 (Minn.1990). Moreover, had appellant not proceeded with radiation and chemotherapy treatment, it is doubtful whether a cause of action based on Dr. Murray's alleged negligence would ever have accrued. Thus, it is the *occurrence* rather than the *discovery* of damages which determines when a medical malpractice action has accrued.

Since we hold that appellant's cause of action did not accrue until at least December 4, 1986, we need not address appellant's other arguments concerning the application of either the termination of treatment rule or the single act exception to the termination of treatment rule. Likewise we need not address the issue of whether St. Cloud Pathologists, P.A. and Dr. Murray were engaged in a joint enterprise with other health care providers.

## DECISION

The trial court erred in holding appellants' claim against respondents was barred by the medical malpractice statute of limitations. Appellants did not suffer any damage and their cause of action did not accrue until LeeRoy Peterson began radiation and chemotherapy treatment.

Reversed and remanded.