Kathleen K. ZAGAROS, Appellant,

v.

Beth M. ERICKSON, Respondent,

v.

Charles M. CUTLER, Respondent.

No. C0–96–1454.

Court of Appeals of Minnesota.

Feb. 4, 1997.

Review Denied April 17, 1997.

---

Carole Lofness Baab, Teresa M. Croke, Johnson & Condon, P.A., Minneapolis, for Respondent Beth M. Erickson.

William M. Hart, Rodger A. Hagen, Meagher & Geer, P.L.L.P., Minneapolis, for Respondent Charles M. Cutler.

Marcy S. Wallace, Charlotte M. Reed, St. Paul, for Appellant.

Considered and decided by SHORT, P.J., and RANDALL and DAVIES, JJ.

## OPINION

RANDALL, Judge.

Kathleen K. Zagaros, plaintiff in a medical malpractice action, appeals from the district court's grant of summary judgment in favor of psychologists Charles M. Cutler and Beth M. Erickson. Appellant contends: (1) the statute of limitations for medical malpractice does not bar her negligent misdiagnosis claim against Erickson or her claims against Cutler arising from allegedly negligent performance of a custody study; (2) witness immunity does not protect Erickson from liability for rendering allegedly negligent in-court testimony; and (3) judicial immunity does not protect Cutler from liability in his capacity as a custody evaluator in a dissolution proceeding. We affirm.

### FACTS

**Erickson**

On January 15, 1991, appellant Kathleen K. Zagaros and her husband Anthony Stael began marriage counseling with respondent Beth M. Erickson, a Minnesota-licensed psychologist. Zagaros met with Erickson for counseling eight times, five sessions with Stael and three sessions individually. Zagaros's last session with Erickson was on April 11, 1991. Thereafter, Stael continued individual counseling with Erickson.

Erickson initially diagnosed Zagaros with depression, but by April 11, 1991, she diagnosed Zagaros as suffering with borderline personality disorder (BPD). She did not inform Zagaros of the BPD diagnosis or recommend any treatment. Erickson did not record either her diagnosis or the basis for it in her clinical files, but Erickson may have entered the diagnosis into her computerized records used to bill insurance carriers.

One week before the November 17–20, 1992, dissolution hearing, Erickson informed Stael that she had diagnosed Zagaros with BPD. Stael then decided to seek primary physical custody instead of the joint legal and physical custody he had been seeking prior to learning of the BPD diagnosis. Zagaros did not learn of the BPD diagnosis through discovery, because Erickson had not recorded the diagnosis in her records.

Erickson testified that Zagaros suffered from BPD and that those who suffer from BPD have difficulty establishing relationships. She testified that they may exhibit persistent and consistent anger that may become terrifying to a child. Further, she

testified that Zagaros's child was in danger because parents suffering from BPD frequently abuse their children, both physically and emotionally. BPD does not resolve without a therapeutic plan, but the prognosis improves markedly with long-term psychotherapy. Based on the severe BPD diagnosis, Erickson recommended that Steal be awarded physical custody.

## Cutler

Zagaros commenced dissolution proceedings against her husband Anthony Stael in April, 1991. Custody was not resolved through mediation. Stael and Zagaros decided on an independent custody evaluation, rather than having the evaluation done through Dakota County Court Services. Zagaros selected respondent Charles M. Cutler, a Minnesota-licensed psychologist with a Ph.D. in clinical psychology, and Stael agreed to cooperate. Zagaros and Cutler entered into an oral agreement at Cutler's usual rate and Zagaros paid Cutler a retainer to begin the study.

The custody evaluation lasted six weeks, from October 29, 1991, to December 10, 1991. Evaluative sessions took place at Cutler's office and Zagaros paid for the individual sessions. Cutler met three times with the child, two times with each parent and one joint session with the child and Stael. Cutler did not undertake any psychological treatment and did not perform a home study. Zagaros believed that Cutler, in performing the custody study, worked for the child's best interests. Although Zagaros paid the bills, Cutler believed he had been retained by both parents for the sole purpose of conducting a neutral, independent custody evaluation. In conformance with his understanding that he had not been hired to provide therapy, Cutler refused Zagaros's request for a psychological diagnosis of herself and Stael for insurance purposes.

After Cutler completed the evaluation, he informed both parties that he was ready to offer a custody recommendation. He informed Zagaros that he would need a retainer to write the report. Zagaros did not send Cutler the retainer. When Stael found out sometime around mid-January or February 1992 that the report had not been written due to lack of a retainer, he paid the retainer. Cutler completed his report and recommended joint custody.

Zagaros's attorney wrote to Cutler on April 28, 1992, directing him not to complete the custody report and not to disclose any information regarding the study to Stael or his attorney. Cutler subsequently received a subpoena duces tecum and notice of deposition ordering his appearance at deposition on September 9, 1992. The subpoena directed Cutler to bring all documents relating to the custody evaluation. After receiving the subpoena, Cutler received a letter from Zagaros dated September 3, 1992, requesting him not to release his records of the study and asserting that she revoked all prior authorizations. Zagaros did not attempt to quash the subpoena. Cutler appeared at the deposition and provided his custody report and other related documents. At the deposition, Cutler learned for the first time that Zagaros had filed a complaint with the State Board of Psychology against him, criticizing his protocol and procedure in performing the custody evaluation.

Stael called Cutler to testify at the dissolution hearing as a custody evaluator. Cutler testified that Zagaros suffered from some personality difficulties, stating: "Clearly in my mind there is trouble there." He was unsure, however, that the diagnosis was as severe as BPD. Cutler recommended joint legal and physical custody and stated that he preferred Stael as the sole custodian if joint custody was not feasible. The trial court, adopting much of the testimony of Erickson and Stael, ordered the marriage dissolved and awarded sole legal and physical custody to Stael. Zagaros filed a motion for amended findings and conclusions or, in the alternative, a new trial. The trial court denied the motions and this court affirmed.

Zagaros remained unaware of Erickson's BPD diagnosis until hearing of it through Erickson's trial testimony. Dr. Rodger C. Kollmorgen, M.D., Ph.D., J.D., performed a psychiatric and psychological evaluation of Zagaros on April 4, 1994, and concluded that she does not suffer from BPD.

Zagaros then initiated this action against Cutler on November 15, 1994, and Erickson on November 16, 1994, asserting medical malpractice claims and seeking to recover for emotional distress, attorney fees related to the dissolution, and her child support payments. Following summary judgment hearings, the trial court granted Cutler's and Erickson's summary judgment motions by order dated April 8, 1996.

## ISSUES

1. Does the medical malpractice statute of limitations bar Zagaros's claims against Erickson and Cutler?

2. Does testimonial privilege protect Erickson from liability based on her testimony during the dissolution proceedings?

3. Does the doctrine of judicial immunity protect custody evaluators not appointed by the court?

## ANALYSIS

A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal, the reviewing court views the evidence in the light most favorable to the party against whom summary judgment was granted and accepts as true factual allegations made by appellant. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

### I.

### Statute of Limitations for Medical Malpractice

■ An action for medical malpractice is barred when not commenced within two years of the date on which the cause of action accrues. Minn.Stat. § 541.01 (1996); Minn. Stat. § 541.07(1) (1996). The cause of action generally accrues when treatment for a particular condition ceases. *Fabio*, 504 N.W.2d at 762; *Haberle v. Buchwald*, 480 N.W.2d 351, 354–55 (Minn.App.1992) (explaining that a practical reason for the termination of treatment rule is that actionable treatment

does not ordinarily consist of a single act with an easily determined, precise time of occurrence), *review denied* (Minn. Aug. 4, 1992). Under the termination of treatment rule, three factors must be considered in determining when treatment ceased: (1) whether there was a relationship between physician and patient with regard to the particular injury or malady that the physician was employed to cure; (2) whether the physician continued to attend and examine the patient in relation thereto; and (3) whether there was something more to be done to effect a cure. *Schmit v. Esser*, 183 Minn. 354, 358–59, 236 N.W. 622, 625 (1931) (explaining that termination of treatment does not necessarily depend on the termination of the entire relation of physician and patient; treatment for a particular ailment or injury might terminate and the relation of physician and patient continue).

■ The rationale underlying the termination of treatment rule is to foster the patient's reliance on the physician during the course of curative treatment because the trust relationship between patient and physician inhibits the patient's ability to discover acts of omission or commission constituting malpractice. *Haberle*, 480 N.W.2d at 355. Concerns underlying the termination of treatment rule are not present when a specific course of treatment terminates at a specific point in time and all subsequent treatment is independent of the alleged malpractice and in no way negligent. *Id.* In such "single act exception" cases, the two-year statute of limitations begins to run at the time of the negligent act and not at the termination of all treatment. *Id.* at 355–56 (noting that the single act exception applies, not only to conduct that starts and ends in a moment, but also to a course of malpractice that terminates at a specific point in time).

### A. Zagaros's Claims Against Erickson

■ Zagaros claims her cause of action against Erickson for misdiagnosis of BPD accrued when Erickson testified that Zagaros suffered from BPD on November 19, 1992, during the dissolution hearing, less than two years before commencement of the action.

She claims no action could be brought prior to that time because she was not damaged by the misdiagnosis until Erickson testified. Erickson contends Zagaros's claims arising from negligent diagnosis are barred by the medical malpractice statute of limitations because treatment ceased more than two years before commencement of the action. We agree. It is undisputed Erickson terminated treatment of Zagaros on April 11, 1991. That day they completely terminated their physician and patient relationship.

Generally, the negligent conduct of a physician causes at least some immediate damage to the patient, but the statute of limitations, nonetheless, commences running at termination of the course of treatment, sometime *after* the initial damage occurs. *See Schmit*, 183 Minn. at 359, 236 N.W. at 625 (adopting the termination of treatment rule despite the general rule that a statute of limitations action in tort begins to run at the time of the negligent act which coincides with the injury). Zagaros claims the termination of treatment rule is inapplicable in her case because no immediate damage coincided with Erickson's allegedly negligent misdiagnosis. *See Peterson v. St. Cloud Hosp.*, 460 N.W.2d 635, 639 (Minn.App.1990) (holding that the occurrence of damages determines when a medical malpractice action accrues). She argues she was not injured by any lack of treatment or non-communication of the BPD diagnosis because she never had BPD. We are not persuaded. We conclude damages occurred when Erickson failed to inform Zagaros of the BPD diagnosis and failed to recommend proper treatment in accordance with Zagaros's symptoms.

We recognize Zagaros was unable to bring a claim against Erickson before learning of the BPD diagnosis. But in Minnesota, the statute of limitations for medical malpractice may bar a cause of action before the injured party discovers they are suffering damages caused by negligent medical conduct. *See Johnson v. Winthrop Lab. Div. of Sterling Drug, Inc.*, 291 Minn. 145, 151, 190 N.W.2d 77, 81 (1971) (rejecting the discovery rule). Accepting as true the factual allegations made by Zagaros, we must determine whether Erickson's conduct would coincide with any injury to Zagaros so that the cause of action would accrue when termination of treatment ceased.

■ A psychologist has a duty to diagnose mental disease properly and to apply proper treatment. *See Thorkeldson v. Nicholson*, 145 Minn. 491, 492, 175 N.W. 1008, 1009 (1920) (physicians have a duty to make a proper diagnosis); *Schmit*, 183 Minn. at 358, 236 N.W. at 625 (negligent failure to treat an injury needing treatment amounts to negligent treatment). At least nominal damages are inferred when the legal rights of a patient are violated by a psychologist's breach of duty. *See Larson v. Chase*, 47 Minn. 307, 310–11, 50 N.W. 238, 239 (1891) (Whenever the "invasion of a legal right is established, the law infers some damage, and, if no evidence is given of any particular amount of loss, it declares the right by awarding nominal damages.")

■ Whether or not Zagaros actually suffered with a disorder as severe as BPD, Erickson apparently recognized symptoms that she believed raised significant mental health concerns. Erickson testified that those who suffer from BPD have difficulty establishing relationships and may exhibit persistent and consistent anger. In addition, she believed, based on the BPD diagnosis, that Zagaros's child was in danger of physical or emotional abuse. Erickson did not expect Zagaros to improve without a therapeutic plan and she understood that prognosis for BPD sufferers improves markedly with long-term psychotherapy. Although Cutler did not diagnose BPD, his testimony reflected a similar concern that Zagaros suffered from personality difficulties. We cannot infer that failure to inform a patient of such a serious concern would not harm the patient, at least in a small enough way to trigger a cause of action, if there is one. Regardless of the sufficiency of Erickson's methodology or the accuracy of her ultimate diagnostic conclusion, we infer, as part of our analysis, that Zagaros was at least nominally injured when important information relating to her mental health and the safety of her child was not communicated and appropriate treatment not recommended. Where a psychologist diagnoses a patient with a serious

mental disorder requiring treatment and the psychologist fails to communicate that information or to recommend appropriate treatment, at least nominal damages, sufficient to accrue the cause of action, will be inferred. Thus, Zagaros's cause of action for medical malpractice arose before Erickson's testimony and is barred by the applicable statute of limitations.

■ Zagaros claims the statute of limitations was tolled by Erickson's fraudulent concealment. This argument is unpersuasive. Zagaros failed to present any evidence of an intentional affirmative act or statement concealing a potential cause of action. *See Haberle,* 480 N.W.2d at 357 (requiring an affirmative act or statement concealing a potential cause of action to establish fraudulent concealment).

## B.  Zagaros's Claims Against Cutler

Zagaros commenced this lawsuit against Cutler on November 15, 1994. Cutler contends all of Zagaros's medical malpractice claims arise from his performance of a custody study and are barred by the statute of limitations for a medical malpractice cause of action because the custody study was completed on December 10, 1991, more than two years before commencement of the action. We agree. Medical malpractice actions based on contract are barred if not commenced within two years of the date on which the cause of action accrues. Minn. Stat. § 541.01; Minn.Stat. § 541.07(1).

[9, 10] A cause of action for breach of contract accrues upon breach. *Levin v. C.O.M.B. Co.,* 441 N.W.2d 801, 803 (Minn. 1989) (citing *Bachertz v. Hayes–Lucas Lumber Co.,* 201 Minn. 171, 176, 275 N.W. 694, 697 (1937)). The alleged breach by Cutler occurred in the course of the custody evaluation that was completed on December 10, 1991, more than two years before commencement of the action against Cutler on November 15, 1994. Thus, the contract cause of action is barred by the medical malpractice statute of limitations.

The negligence claims arising from Cutler's performance of a custody study fall under the single act exception if: (1) all identifiable acts of negligence occurred prior to an identifiable point in time; (2) all subsequent treatment was independent of the alleged malpractice and in no way had the effect of concealing any prior defective treatment or any injury arising from it; and (3) the plaintiff knew or should have known the facts upon which her claim could be based. *Haberle,* 480 N.W.2d at 355–56. We find that all negligent acts relating to proper completion of the custody evaluation occurred in the course of the evaluation. Zagaros claims she became concerned about Cutler's performance during the course of the study and she discharged him based on her belief that the evaluation was performed negligently. Thus, she admits awareness of facts upon which her claim could be based. The cause of action is barred because it accrued by December 10, 1991, more than two years before commencement of the action.

Zagaros alleges malpractice for breach of fiduciary duty[1] because Cutler testified despite allegedly impaired objectivity and despite Zagaros's invocation of privilege. Zagaros does not contend that Cutler's testimony was not based entirely on recommendations formed in the course of the custody study. Any injury, therefore, flowed directly from the custody evaluation completed more than two years before commencement of the action. The harm, if any (proximate cause is a weak link in appellant's theory, but is not reached because of our decision on other issues), flowed from the action accruing on December 10, 1991. We conclude the statute of limitations bars the action.

## II.

### Witness Immunity

■ Zagaros contends that Erickson's dissolution hearing testimony constituted

---

1.  Minnesota has declined to recognize a cause of action for tortious breach of the physician-client relationship. *Stubbs v. North Mem'l. Med. Ctr.,* 448 N.W.2d 78, 83 (Minn.App.1989) (affirming summary judgment against plaintiff on claims of invasion of privacy by physician and tortious breach of physician/client relationship), *review denied* (Minn. Jan. 12, 1990).

malpractice because Erickson improperly failed to advise the district court of the limitations on her methodology, procedures, and opinions. She contends that witness immunity does not protect Erickson from civil liability based on her testimony at trial. Erickson contends that she is protected against liability based on her testimony, because Zagaros's claim sounds in defamation. We agree. Minnesota law is clear that a trial witness may not be sued for defamation based on the witness's trial testimony. *Matthis v. Kennedy*, 243 Minn. 219, 224, 67 N.W.2d 413, 417 (1954).

The doctrine of witness immunity grants total immunity to participants in judicial proceeding for false and defamatory statements regardless of the nature or intent of the speaker. *Johnson v. Dirkswager*, 315 N.W.2d 215, 220 (Minn.1982). Under the privilege there is no liability for utterances that have reference to, relation with, or connection to the subject matter of the action. *Matthis*, 243 Minn. at 225, 67 N.W.2d at 418. The elements of a defamation claim are as follows: (1) communication to someone other than plaintiff; (2) falsity of the utterance; and (3) the utterance tends to lower plaintiff's reputation and to lower plaintiff in the eyes of the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980).

Erickson contends that Zagaros's claim sounds in defamation because Zagaros asserts: (1) Erickson's conclusion that Zagaros suffers from BPD is untrue; (2) Erickson published the untrue declaration through her testimony; (3) she suffered loss of custody and reputational damages resulting from that publication. Zagaros insists that the negligence claim she asserts is not based on the defamatory conclusion that she suffers from BPD but rather on Erickson's professional malpractice in forming the diagnosis and later in testifying to the diagnosis. Specifically, Zagaros alleges that Erickson, contrary to the express rules applicable to all Minnesota psychologists, failed to advise the trial court of the limitations on her methodology, procedures, and opinions in accordance with Minnesota State Board of Psychology Rule 7200.500, Subpt. 3.

Zagaros recognizes that any liability for Erickson's allegedly false diagnostic conclusion is prevented under the doctrine of witness immunity for charges founded on defamation. Rather, Zagaros claims the actionable negligence was the failure of Erickson to point out her own negligence in forming the diagnosis when testifying. By reframing the issue and separating methodology from result Zagaros attempts to bypass witness immunity for defamation. We conclude that Zagaros's cause of action for negligent testimony related to methodology and the allegedly defamatory conclusion are so intertwined as the causes of Zagaros's alleged harm that it would be unfair, and probably impossible, to expect a jury to distinguish between the two.

Erickson is protected by witness immunity because Zagaros's claim is essentially relabeling a defamation claim. *See Wild v. Rarig*, 302 Minn. 419, 447, 234 N.W.2d 775, 793 (1975) (holding plaintiff's suit sounded in defamation because "regardless of what the suit is labeled, the thing done to cause any damage to [plaintiff] eventually stems from and grew out of the defamation").

## III.

**Judicial Immunity**

Cutler asks this court to extend the doctrine of judicial immunity to encompass custody evaluators without court appointment, claiming it is fundamental that a professional have the ability to relate his knowledge and opinions in cases such as this dissolution proceeding without fear of possible litigation based upon their testimony. Zagaros argues that the doctrine of judicial immunity should not be extended to protect custody evaluators without court appointment from liability founded upon their testimony and production of documents. We decline to formally extend judicial immunity to custody evaluators without court appointment. That extension is not needed for our decision. We do understand the logic of Cutler's argument. For now, the doctrine of judicial immunity protects those who are appointed by the court to perform judicial or quasi-judicial functions. *See Dzi-*

*ubak v. Mott,* 503 N.W.2d 771, 775–76 (Minn.1993) (extending judicial immunity from malpractice suits to public defenders, though not to privately retained defense counsel).

Further, Minnesota has not yet recognized medical malpractice causes of action alleging tortious breach of fiduciary duty. *See Stubbs,* 448 N.W.2d at 83 (declining to recognize a cause of action for tortious breach of the physician-client relationship). Our previous analysis of the statute of limitations for medical malpractice obviates a need to formally decide other issues.

If a district court finds it necessary to obtain the opinion of a custody evaluator to decide custody issues where custody is contested, courts have statutory authority to order evaluations and reports. *See* Minn. Stat. § 518.167, subd. 1 (1996) ("In contested custody proceedings * * * the court may order an investigation and report concerning custodial arrangements for the child."). The statute does not limit the court to selecting the county welfare agency or department of county services. *See Doe v. Hennepin County,* 623 F.Supp. 982, 984, 986, 987 (D.Minn. 1985) (allowing parents to select private psychologists from a list of court-approved psychologists for later court appointment). The district court in this case apparently did not order an investigation and report and did not exercise its authority to appoint Cutler.

This precise issue of extending absolute judicial immunity to evaluators who are not court appointed will need to be looked at down the road.

### DECISION

The grant of summary judgment in favor of respondent is affirmed.

**Affirmed.**

DAVIES, Judge (concurring specially).

I write separately because I would reach the issue of judicial immunity for respondent Charles M. Cutler.

In my view, the district court in effect delegated selection of the custody evaluator to the parties, at their request. The parties then jointly chose Cutler (notwithstanding

that the father deferred to the selection made by appellant Zagaros). In this fact situation, Cutler comes to court with the same judicial immunity that he would enjoy had the district court appointed him directly.