**Peter W. MORTON, Respondent,**

v.

**Gregg N. DYSTE, M.D., Appellant.**

No. C4–00–2046.

Court of Appeals of Minnesota.

June 12, 2001.

Mark Hallberg, Mackenzie & Hallberg, P.A., Minneapolis, MN, (for respondent).

William H. Leary, Geraghty, O'Loughlin & Kenney, P.A., St. Paul, MN, (for appellant).

Considered and decided by RANDALL, Presiding Judge, PETERSON, Judge, and FOLEY,* Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

RANDALL, Judge

The district court denied appellant-physician's motion for summary judgment and ruled that Minn.Stat. § 541.076 (2000) revived respondent's time-barred claim. Appellant challenges the district court's ruling, arguing that the Minnesota Legislature did not intend Minn.Stat. § 541.076 to revive claims that were time-barred by the previous statute of limitations. We reverse.

## FACTS

Respondent Peter W. Morton was injured during a bicycle accident on August 27, 1995. After admission to North Memorial Medical Center, appellant Dr. Gregg N. Dyste, a neurosurgeon, treated Morton's resulting spinal cord injury. Since August 1995, Morton has suffered from quadriplegia and is respirator dependent.

At the time of Morton's injury, under Minn.Stat. § 541.07(1) (1994), the statute of limitations for medical-negligence claims was two years. The parties do not dispute that Morton's cause of action accrued in 1995, and thus became time-barred in 1997. In 1999, the Minnesota Legislature enacted Minn.Stat. § 541.076, extending the statute of limitations for medical-negligence claims to four years, which became effective on August 1, 1999.

On August 26, 1999, four years after his injury, Morton commenced a medical-negligence action against Dyste. On November 18, 1999, Dyste moved for summary judgment, claiming that Morton failed to commence his action within the two-year limitation period provided by Minn.Stat. § 541.07(1). On December 6, 2000, the district court denied Dyste's motion for

summary judgment and certified the question as important and doubtful pursuant to Minn. R. Civ.App. P. 103.03(h). After two amended orders, Dyste now appeals from the district court's denial of his summary judgment motion.

## ISSUE

Does Minn.Stat. § 541.076 (2000), which provides a four-year statute of limitations for medical-negligence claims, apply to a claim that accrued in 1995 and became time-barred in August 1997, two years before the statute of limitations for such claims was changed from two years to four years?

## ANALYSIS

Dyste argues that the district court erred by applying Minn.Stat. § 541.076 (2000) retroactively to revive Morton's time-barred claim. When reviewing an appeal from summary judgment, we ask two questions: (1) whether any genuine issues of material fact exist and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). Statutory interpretation is a question of law that we review de novo. *Koehnen v. Dufuor*, 590 N.W.2d 107, 108–09 (Minn.1999).

■ At the time of Morton's injury, the statute of limitations for medical-negligence claims was two years. Minn.Stat. § 541.07(1) (1994). Because Morton's claim accrued in 1995 [1] and he failed to file a lawsuit within two years of accrual, his claim became time-barred in 1997. In 1999, the Minnesota Legislature enacted a four-year statute of limitations that applied to medical-negligence claims. 1999 Minn. Laws ch. 23, § 3 (codified at Minn.Stat.

---

1. The parties do not dispute when Morton's claim accrued. Accrual for medical malpractice occurs when treatment for the particular

condition ceases. *Zagaros v. Erickson*, 558 N.W.2d 516, 520 (Minn.App.1997), *review denied* (Minn. Apr. 17, 1997).

§ 541.076(b) (2000).) The four-year statute became effective August 1, 1999, and applied "to actions *commenced on or after* that date." *Id.* (emphasis added).

On August 26, 1999, four years following his injury and after the new statute of limitations was enacted, Morton commenced a lawsuit against Dyste. Thus, Morton filed his claim after it became time-barred under the old statute of limitations but just before the new, four-year limitation period had elapsed. Because Morton's claim was time-barred for approximately two years before the four-year statute of limitations became effective, "revival" of his claim would be required to allow it to be timely filed under the new limitation period. The issue squarely presented is whether Minn.Stat. § 541.076 operates not only retroactively, but operates retroactively to revive previously time-barred medical-malpractice claims.

## A. Retroactivity

■■■ Despite the timeline of events, Morton asserts that it is speculative to suggest that his claim was time-barred. He argues that since he never filed a lawsuit, no court ever had a chance to rule on the statute of limitations and, therefore, he argues it has never been "adjudicated" as time-barred. Morton's assertion is not persuasive. *See Chizmadia v. Smiley's Point Clinic,* 428 N.W.2d 459, 461 (Minn. App.1988) (reviewing court determined action was time-barred by law even though district court had not reached statute of limitations issue), *review denied* (Minn. Oct. 26, 1988). Morton's argument that his claim was not technically time-barred in August 1997, because he did not file it until August 26, 1999, "so no court ever said it was time-barred" (and thus he argues his 1995 injury claim is still "alive" and can take advantage of the August 1, 1999, extension from two to four years) is a

backwards argument. It can be answered best by straightening it out. There is no affirmative duty on defendants who have never been sued to hire an attorney, get service of process on all potential claimants, and then run into the court one day after the statute of limitations they rely on has expired, and affirmatively ask the district court for a declaratory judgment that "if a lawsuit is started against me based on these facts, I want a declaratory judgment that there is no lawsuit because it is time-barred." Historically, and to the present day, *plaintiffs bear the affirmative burden* of commencing their lawsuit within the proper time limit under the applicable statute of limitations. Defendants have no affirmative duty to bring a potential lawsuit to the court's attention and ask for a "pre-lawsuit ruling" that all applicable statutes of limitations have expired.

■■■ Morton then argues that the language of Minn.Stat. § 541.076 shows the legislature's clear and manifest intent to apply the statute retroactively. We are not persuaded. First, "[n]o law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Minn.Stat. § 645.21 (2000). Thus, there is a presumption against retroactive effect. Defeat of this presumption requires

> much clearer evidence of retroactive intent in the statute's language—such as mention of the word "retroactive"—before [a reviewing court will] determine that a statute was intended to be applied retroactively.

*Duluth Firemen's Relief Ass'n v. City of Duluth,* 361 N.W.2d 381, 385 (Minn.1985).

Morton relies on *LaVan v. Community Clinic,* 425 N.W.2d 842 (Minn.App.1988), *review denied* (Minn. Aug. 24, 1988), which examined Minn.Stat. § 541.15 (1986), a provision of the 1986 Tort Reform Act. This provision shortened the "suspension"

period of limitation for minority as a disability in medical-negligence claims. As in this case, the statutory amendment in *La-Van* applied to "actions commenced on or after the effective date." *Id.* If Minn.Stat. § 541.15 had a retroactive effect, the plaintiff's claim in *LaVan* would have been time-barred because the new, shorter limitations period had already elapsed. On the other hand, if Minn.Stat. § 541.15 applied prospectively, the plaintiff's claim would have been timely because she had not yet reached 19. This court found that Minn.Stat. § 541.15 was retroactive. *La-Van,* 425 N.W.2d at 845–46.

Morton contends that because of the similarity between the language in Minn. Stat. § 541.15 and Minn.Stat. § 541.076, *LaVan* is controlling. But Morton does not account for a factor that distinguishes *LaVan.* The 1986 Tort Reform Act contained several provisions, many with differing effective dates and varying enactment language. In *LaVan,* we found that Minn.Stat. § 541.15 was retroactive after comparing it to several enactment provisions contained within the 1986 Tort Reform Act. When examined alongside contrasting language in other provisions of the act, the entirety of the enactment language in the act led us to conclude that Minn. Stat. § 541.15 was retroactive. In other words, in determining whether Minn.Stat. § 541.15 was retroactive, we compared other language from the same act to the language in question. In this case, there is no such contrasting language. Minn. Stat. § 541.076 is not part of a larger act with comparative enacting language. Thus, the mere use of the "commenced on or after" language does not show specific retroactive intent on the part of the legislature. Most importantly, we did not even address the issue of *revival* in *LaVan.*

Morton also relies on *K.E. v. Hoffman,* where we held that the statute of limita-tions of the new law relating to sexual-abuse claims applied "to actions pending on or commenced on or after [the enactment date of the new statute]." *K.E. v. Hoffman,* 452 N.W.2d 509, 512 (Minn.App. 1990), *review denied* (Minn. May 7, 1990) (quotation omitted). In *Hoffman,* we concluded that the new statute was retroactive partly because its language indicated that it should apply to pending cases. *Id.* Morton's case when he filed his lawsuit in 1999 was not "pending." He had never filed it so as to make it "pending," and during the time that he did not file it, the then controlling statute of limitations, two years, ran out on Morton.

Morton then cites *Baertsch v. Minnesota Dept. of Revenue,* 518 N.W.2d 21, 24 (Minn.1994), pointing to the Minnesota Supreme Court's finding that the word "retroactive" need not be used to find legislative intent for retroactivity. But in *Baertsch,* no words of retroactivity were required to show the legislature's retroactive intent, since the statute's effective date was *before* the statute was enacted. *Id.* The amendment was passed in May 1993 and its effective date was January 1, 1993, *five months earlier. Id.* at 23–24. Thus, by definition, five months retroactively was built into that statute. In contrast, Minn.Stat. § 541.076 discussed claims commenced *on or after* August 1, 1999. Here, the effective date of Minn. Stat. § 541.076 is *after* the statute's enactment date, which is by far the most common way to choose a starting time for a legislative enactment.

Finally, in *Borich v. Borich,* 450 N.W.2d 645, 646 (Minn.App.1990), we found the very same "commenced on or after" language amendment "clearly indicated a prospective effect only." Although *Borich* was not a statute of limitations case, when compared to *LaVan,* it shows that Minnesota courts have not interpreted the "com-

menced on or after" language to be exclusively retroactive without looking further at the legislation.

## B. Revival

 Retroactivity is the threshold issue, but the specific narrow question here is whether the four-year statute of limitations can revive a claim that was time-barred *before* its enactment. Even if the legislature intends retroactive operation of a statute, it is not automatic that it intends the legislation to revive a previously time-barred claim. *See Whittier v. Village of Farmington,* 115 Minn. 182, 187, 131 N.W. 1079, 1081 (1911) (holding that amendment lengthening time to appeal election from six years to eight years "would not revive" claim that was time barred before new law took effect). In *Whittier,* the Minnesota Supreme Court stated:

> [W]e have found no case where it has been held that a right, once existing, but lost because of a failure to comply with a statute, a compliance with the provisions of which was essential to its preservation, has been revived by an amendment of the statute changing the steps necessary to protect the right.

*Id. Whittier* is still the law. Morton argues that cases since *Whittier* support retroactive application of Minn.Stat. § 541.076. But all the cases he cites can be distinguished because they address claims that were not time-barred *before* the enactment of the new statute. Although retroactivity was at issue in those cases, *revival* was not. Morton asserts that *Whittier* is not authoritative because it was superceded by the enactment of Minn.Stat. § 645.21. But Morton fails to explain how Minn.Stat. § 645.21 is inconsistent with *Whittier.* We find *Whittier* consistent with Minn.Stat. § 645.21. The court in *Whittier* held that the new, extended statute of limitations cannot revive a time-barred claim, which is consistent with the presumption of prospectiveness set forth in Minn.Stat. § 645.21. Based on the relevant caselaw regarding retroactivity, the language of Minn.Stat. § 541.076 does not show a clear and manifest intent on the part of the legislature to apply the statute retroactively. In short, the language of Minn.Stat. § 541.076 does not show anything close to a clear and manifest intent on the part of the legislature to apply the statute so retroactively that it brings to life earlier claims that had become time-barred before the August 1, 1999, effective date.

With a few slight differences in arguments, which we have addressed above, this court's recent decision in *Gomon v. Northland Family Physicians, Ltd.,* 625 N.W.2d 496 (Minn.App.2001), resolved the issue of how Minn.Stat. § 645.21 impacts post-*Whittier* cases. In *Gomon* we held that

> [t]he distinction between applying an expanded statute of limitations "retroactively" to claims not yet barred * * * and application to claims time-barred * * * has clearly survived after passage of Minn.Stat. § 645.21.

*Id.* at 500.

 Morton argues that the "commenced on or after" language is superfluous unless the statute is intended to apply to actions that accrued before the enactment date. It is a "maxim of statutory construction that a statute is to be construed, if possible, so that no word, phrase, or sentence is superfluous, void, or insignificant." *Duluth Firemen's Relief,* 361 N.W.2d at 385 (citation omitted). The language is not superfluous, however, because the statute might apply to claims that were not time-barred before the enactment of the new statute of limitations. *Gomon,* 625 N.W.2d at 500. In other words, even if the "commenced on or after" language

was intended to apply to claims that *were not* time-barred before the amendment date, this language does not show a specific intent to revive those claims such as Morton's that *were* time-barred before August 1, 1999.

Morton goes to great lengths to examine the legislative history of Minn. Stat. § 541.076 in an effort to show that the legislature intended to revive previously time-barred claims. If a statute's language is ambiguous, it is permissible to look at legislative history to determine how the language should be read. *Baumann v. Chaska Building Center, Inc.*, 621 N.W.2d 795, 797 (Minn.App.2001). Whether statutory language is ambiguous is a question of law. *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn.1996). But,

> [w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (2000). If the statutory language is unambiguous, "we cannot supply that which the legislature has declined to provide." *Borich*, 450 N.W.2d at 647 (citation omitted).

As set out above, we find the language of Minn.Stat. § 541.076 unambiguous in that it shows no specific intent to revive *previously-barred* claims. Assuming, for the sake of argument, that the statute is ambiguous regarding revival, examination of the legislative history reveals a complete lack of consensus on whether the August 1, 1999 statute of limitations revives previously time-barred claims. The legislature's intent arises from the "collective understandings of the individual members." *Handle with Care, Inc. v. Department of Human Services*, 406 N.W.2d 518, 522 (Minn.1987). Senator Kiscaden's comments show an intent *not* to revive previously time-barred claims:

> Kiscaden: * * * I just want to make sure that the effectiveness date accomplishes what we had agreed to in committee in terms of not being able to initiate any causes of action, not renewing old claims and so on.

*Senate Floor Debate on H.F. No. 56* (Mar. 8, 1999). A different intent is inferable from a comment by Representative Bishop in his testimony before the House Health and Human Services Committee:

> Bishop: And only one of the amendments came forth at the end, and that was, that was to put the statute at four years, to have it retroactive so that anyone who two years ago had a cause of action that otherwise would be expired, if it were in January of 1997, for example, would have a four-year statute of limitations * * *.

*Hearing on H.F. No. 56 Before the House Comm. on Health & Human Servs.* (Feb. 4, 1999). Even Representative Bishop's comments do not necessarily distinguish between retroactivity and revival. We can find no unambiguous legislative history that gives support to Morton's position that his previously time-barred claim has been revived. As we noted in *Gomon:*

> The final discussion, therefore, appears to have represented the senators that this bill would not even retroactively extend the four-year limitation to actions that accrued prior to August 1, 1999, let alone revive time-barred actions.

*Gomon*, 625 N.W.2d at 501–02.

## DECISION

The four-year statute of limitations provided by Minn.Stat. § 541.076 (2000), which governs medical-malpractice claims

commenced on or after August 1, 1999, does not apply retroactively to revive a claim that was time-barred before August 1, 1999. The district court erred as a matter of law by reviving Morton's claim and by denying Dyste's summary-judgment motion.

**Reversed.**