Franklin David CHAMBERS, M.D. *v.*
Harold Patrick STERN, M.D.

99–20 994 S.W.2d 463

Supreme Court of Arkansas
Opinion delivered July 8, 1999

[Petition for rehearing denied September 9, 1999.]

*David M. Hargis* and *Douglas W. Bonner, Jr.*, for appellant.

*Clevenger, Angel & Miller, P.L.L.C.*, by: *Richard L. Angel* and *Stuart P. Miller*, for appellee.

W H. "DUB" ARNOLD, Chief Justice. The instant appeal arises from a medical malpractice action filed by the appellant, Franklin David Chambers, M.D., against the appellee, Harold Patrick Stern, M.D. On appeal, Chambers challenges the trial court's orders (1) granting Dr. Stern's motion to dismiss or, alternatively, his motion for summary judgment, based upon Dr. Stern's entitlement to absolute judicial immunity, (2) striking evidence filed by Chambers in supplementation of his response to Dr. Stern's summary-judgment motion, and (3) expanding judicial immunity to medical "treatment" in violation of Chambers's constitutional right to a jury trial.

Our jurisdiction is authorized pursuant to Ark. Sup. Ct. Rule 1-2(b)(6) (1998). We accepted certification of this case from the Court of Appeals in order to resolve an issue of first impression, namely, whether the application of judicial immunity to a court-appointed physician engaged in medical "treatment" violates a party's constitutional right to a jury trial. Although we do not reach the constitutional issue, we reverse and remand on appellant's first point. Specifically, we hold that the trial court erred in granting appellee's summary-judgment motion because genuine issues of material facts remain.

Chambers commenced his medical malpractice action against Dr. Stern, and other parties not relevant to this appeal, on June 30, 1997. Dr. Stern had been appointed by a chancery court to assist it in evaluating custody and visitation issues arising from Chambers's pending divorce action. In part, the chancellor ordered that Dr. Stern meet, evaluate, and counsel Chambers, his minor children, and his former wife, throughout the divorce proceedings. Chambers and his wife agreed to the appointment of Dr. Stern, who over a four-year period evaluated them and their children, engaged them in therapy, and reported his findings, observations, and recommendations to the chancellor.

Subsequently, Chambers contended that Dr. Stern committed malpractice during the therapy or "treatment" phase with the family members. In response, Dr. Stern filed a motion to dismiss

or, alternatively, a motion for summary judgment, claiming that he was entitled to judicial immunity while he was carrying out the chancery court's order. After reviewing the parties' pleadings, exhibits, depositions, and affidavits, the trial court agreed with Dr. Stern and dismissed the malpractice action. Notably, the trial court concluded that Dr. Stern was entitled to absolute judicial immunity, extending from the chancellor's order appointing him to evaluate and treat the parties. From the order dismissing Chambers's malpractice action, comes the instant appeal.

### Summary-judgment motion

■ ■ Appellant's first point on appeal challenges the trial court's order granting Dr. Stern's motion for dismissal or, alternatively, his motion for summary judgment. Generally, this court reviews a trial court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff, here, Chambers. *See Hames v. Cravens*, 332 Ark. 437, 440-41, 966 S.W.2d 244 (1998) (citing *Neal v. Wilson*, 316 Ark. 588, 595-96, 873 S.W.2d 552 (1994) (citing *Gordon v. Planters & Merchants Bancshares, Inc.*, 310 Ark. 11, 832 S.W.2d 492 (1992); *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989)); *Mid-South Beverages, Inc.*, 300 Ark. 204, 205, 778 S.W.2d (1989) (citing *Battle*, 298 Ark. 241))). Significantly, a trial judge must look only to the allegations in the complaint to decide a motion to dismiss. *Hames*, 332 Ark. at 441 (citing *Neal*, 316 Ark. at 596 (citing *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993); *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992)); *Mid-South Beverages, Inc.*, 300 Ark. at 205 (citing *Battle*, 298 Ark. 241))).

■ ■ Although the trial court "dismissed" Chambers's action, it acknowledged that it considered matters outside the parties' pleadings, including exhibits, depositions, and affidavits. Accordingly, we treat the trial court's order as one granting Dr. Stern's motion for summary judgment. In reviewing summary-judgment cases, this court need only decide if the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. Further, the moving party always bears the bur-

den of sustaining a motion for summary judgment. All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ark. R. Civ. P. 56 (1998); *Robert D. Holloway, Inc. v. Pine Ridge Add'n Resid. Prop. Owners*, 332 Ark. 450, 453, 966 S.W.2d 241, 243 (1998) (citing *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997)).

▪ Once the moving party makes a prima facie showing that it is entitled to summary judgment, the opponent must meet proof with proof by showing a material issue of fact. *Dillard v. Resolution Trust Corp.*, 308 Ark. 357, 359, 824 S.W.2d 387, 388 (1992). However, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence. *Collyard v. American Home Ins. Co.*, 271 Ark. 228, 230, 607 S.W.2d 666, 668 (1980).

▪ In his response to Dr. Stern's summary-judgment motion, Chambers asserted that the trial court impermissibly expanded the doctrine of judicial immunity to cover a court-appointed physician's "treatment" of parties. The rationale behind judicial immunity is to maintain an independent and impartial judiciary. *See generally*, 48A C.J.S. § 86 (1981 & Supp. 1999). When a public officer is granted discretion and empowered to exercise his independent judgment, like a judge, he becomes a quasi-judicial officer and may enjoy judicial immunity when he is acting within the scope of his authority. *See* 46 AM. JUR. 2d § 70 (1994 & Supp. 1999).

▪ We recently examined the concept of judicial immunity in *Robinson v. Langdon*, 333 Ark. 662, 970 S.W.2d 292 (1998). We noted that judicial immunity is absolute immunity, and we adopted a six-factor test to be considered in determining absolute immunity: (1) the need to assure that the individual can perform his functions without harassment or intimidation, (2) the

presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct, (3) insulation from political influence, (4) the importance of precedent, (5) the adversary nature of the process, and (6) the correctability of error on appeal. *Robinson*, 333 Ark. at 670, 970 S.W.2d at 296. Consistent with these factors, the parties agree that absolute judicial immunity extends to physicians appointed by courts to assist in "evaluations." However, the parties dispute whether judicial immunity continues to shield the court-appointed physician when the evaluation phase progresses to treatment or therapy. Significantly, there is no Arkansas case law on point.

We look, then, to other jurisdictions that have considered the issue before us. For example, in *Myers v. Morris*, 810 F.2d 1437 (8th Cir. 1987), the Eighth Circuit considered the issue of when immunity is appropriate and concluded that:

> nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process have absolute immunity for damage claims arising from their performance of the delegated functions.

*Myers*, 810 F.2d at 1466-67 (citing *Demoran v. Witt*, 781 F.2d 155, 157 (9th Cir. 1986)).

Similarly, the Supreme Court of Iowa first addressed the issue in *Muzingo v. St. Luke's Hosp.*, 518 N.W.2d 776 (Iowa 1994). Prior to *Muzingo*, the Iowa court extended quasi-judicial immunity to nonjudicial officers when their actions were "integral to the judicial process." *Muzingo*, 518 N.W.2d at 777. However, in *Muzingo*, the key issue before the court was whether a court-appointed psychiatrist's and hospital's activities were an integral part of the judicial process so that to deny immunity would disserve the broader public interest that nonjudicial officers act without fear of liability. The high court determined that the court-appointed psychiatrist and hospitals were entitled to quasi-judicial immunity because they were acting as an arm of the court. In support of its position, the court also cited, with approval, the Eighth Circuit's decision in *Myers*. Additionally, the court noted that the focus of its inquiry was on the nature of the function performed and not on the identity or title of a particular actor. *Id.*

■ Public policy considerations also compel us to extend judicial immunity to court-appointed therapists. Psychologists and other experts would be reluctant to accept appointments if they were subject to personal liability for actions taken in their official capacities. See *Doe v. Hennepin County*, 623 F. Supp. 982, 986 (D.C. Minn. 1985). In that vein, we agree with the Minnesota District Court that court-appointed therapists are entitled to absolute immunity for acts committed "within the scope of their appointments." *Doe*, 623 F. Supp. at 986.

The key issue in the instant case is whether Dr. Stern was acting as an arm of the court and performing a quasi-judicial function, or whether he exceeded the scope of the court's order. Notably, in *Doe*, 623 F. Supp. 982 (D.C. Minn. 1985), the plaintiffs could not overcome the therapist's immunity by merely asserting that she was not a good psychologist, or that she should have been a better psychologist. *Id*. In fact, the Minnesota court agreed that the psychologist was entitled to summary judgment as a matter of law because (1) there was no showing that the psychologist was not functioning as a psychologist at all relevant times, (2) the plaintiffs agreed to participate in counseling and selected the therapist, (3) the therapist was officially appointed by the court, and (4) the acts of which the plaintiffs complained were carried out within the scope of the court-appointed capacity. *Doe*, 623 F. Supp. at 986-97.

■ In conclusion, we hold that a court-appointed physician is entitled to judicial immunity so long as he is serving an integral part of the judicial process, by carrying out and acting within the scope of a court's order. However, from our review of the record before us, the trial court failed to make specific, written findings, in its June 4, 1998, order granting Dr. Stern's motion to dismiss, that Dr. Stern did, in fact, act within the scope of his court appointment during the relevant time periods. Accordingly, on remand, the trial court must determine as a matter of law[1] whether Dr. Stern's actions were within the scope of his court-

---

[1] Whether absolute immunity exists is a question of law for the courts. *See generally* 46 Am. Jur. 2d § 68 (1994 & Supp. 1999).

appointed capacity, and if so, his actions taken pursuant to the appointment are entitled to judicial immunity.

However, if the trial court determines that Dr. Stern's actions were outside the scope of the court's appointment, it must determine at what point Dr. Stern exceeded the order and, consequently, forfeited his immunity. Specifically, the trial court must review Dr. Stern's involvement with the Chamberses from June 22, 1993, to April 18, 1994, in light of the chancery court's June 22, 1993, temporary relief order directing the following:

> That while the Court does not find a physical and mental evaluation of the parties or the children appropriate, the Court does find that a qualified therapist or counselor agreed to by the parties should *meet with and counsel the parties and the children relative to the divorce proceedings in which they are involved and the visitation and other matters related thereto and to conduct all necessary evaluations on the parties and children in connection therewith*; that only one therapist or counselor should be used for all the children and the parties and that therapist or counselor should *report directly to the Court his or her findings and observations* and the Court will handle the release of such report to the attorneys for the respective parties; that if the parties are unable to agree on the therapist or counselor to be used, the Court will appoint a therapist or counselor after giving each of the parties an opportunity to supply the Court with the names and qualifications of any therapists or counselors suggested by them for use herein; that Defendant shall be responsible for the payment, as and when due, of all charges made by the therapist or counselor; and that both the parties shall cooperate with and be responsive to the requests and directions of the therapist or counselor involved.

(Emphasis added.)

Next, the trial court must review Dr. Stern's interactions with the Chamberses from April 18, 1994, through the later of (1) the last therapy session by any family member with Dr. Stern, or (2) Dr. Stern's final communication with the chancery court, in light of the chancery court's April 18, 1994, divorce decree, directing the following:

> The parties and the children are directed to cooperate with the Court appointed therapist, H. Patrick Stern, M.D., *to resolve visi-*

*tation problems. Visitation is to be pursuant to Dr. Stern's direction pending further order of the Court.*[2] The Defendant is hereby directed to pay all charges associated with the subject therapy related to visitations problems pending further order of the Court.

(Emphasis added.) Only after the trial court resolves the afore-mentioned legal issues may the jury consider the merits of appel-lant's malpractice claim.

 Viewing the evidence in the light most favorable to Chambers, resolving any doubts against Dr. Stern, and finding that there remain genuine issues as to material facts, we hold that the trial court erred in finding that Dr. Stern was entitled to a judg-ment as a matter of law. In light of our holding, we need not reach the merits of appellant's remaining arguments.

Reversed and remanded.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. I agree with the major-ity court that judicial immunity can be extended to a qualified therapist and that the issue of judicial immunity is an issue of law. In reading the record, it appears the chancery judge's appointment of Dr. Harold Stern under his order and decree entered on June 22, 1993, and April 18, 1994, gave Dr. Stern absolute immunity as a matter of law unless a factual issue exists concerning whether Dr. Stern exceeded his quasi-judicial func-tions. In other words, Dr. Stern's actions were integral to the judicial process. The broad definition of judicial process includes all the acts of a court from the beginning to the end of its proceed-ings in a given cause. *Black's Law Dictionary* 1205 (6th ed. 1990). And the term integral, in its ordinary usage, means a part or a constituent component which is necessary or essential to complete the whole. *Id.* at 809.

---

[2] We render no opinion regarding (1) the validity of the trial court's instruction that, "Visitation is to be pursuant to Dr. Stern's direction pending further order of the Court," or (2) the effect of the validity of that instruction upon the application of judicial immunity to Dr. Stern. The instruction's validity was not challenged, and these issues are not before us on appeal.

In the instant case, the chancellor in his June 22 order directed that a qualified therapist counsel the divorcing parties and their children relative to the divorce proceedings and conduct all necessary evaluations; the therapist was to report his or her findings and observations to the court. The parties agreed that Dr. Stern would perform this role. In his April 18 decree, the chancellor appointed Dr. Stern to resolve visitation problems and visitation was to be made pursuant to Dr. Stern's direction, pending further order of the court. The court's appointment of Dr. Stern and the chancellor's directives were clearly made during and within the divorce proceedings involving David and Debra Chambers and their children, and such appointment and directives were intended to aid the chancellor in the resolution of visitation issues. It is important to note that the chancellor's orders authorized Dr. Stern to counsel the Chambers family. Whether the appointed therapist performed his or her judicial function by conducting evaluations or employing treatment is of little import, since both are cognizable skills used by such professionals when counseling parties.

In contrast, if a therapist had been court appointed to provide evaluations of or counseling to divorcing parties and their children, and during the course of that appointment, the therapist hit or struck one of the parties, the therapist could be found to have acted outside his or her quasi-judicial functions and therefore would not be entitled to immunity. Nor would a court-appointed therapist enjoy such immunity if he or she engaged in unethical sexual intimacies with one of the divorcing parties.

In conclusion, while I agree with the majority court that a court appointed therapist like Dr. Stern is entitled to judicial immunity, I disagree with the court's opinion that the trial court here is required to make any further findings to determine whether Stern acted within the scope of his quasi-judicial functions. That legal issue and supporting evidence was fully before the trial court and in my view, the record supported the circuit judge's ruling awarding Dr. Stern absolute immunity. Therefore, I respectfully dissent.