WAYMOND M. BROWN, Judge
Appellant appeals from the circuit court's order granting summary judgment in favor of appellee. On appeal, appellant's sole argument is that appellee is not entitled to immunity for acts that exceed the scope of his appointment. We affirm.
Appellant and Megan Bolinder conceived I.J. out of wedlock and he was born on March 12, 2010. The parties ended their relationship a couple of months later in May 2010. Thereafter, their less-than-stellar co-parenting relationship led them to litigation over custody of I.J. Bolinder was awarded custody of I.J., subject to appellant's visitation, in the circuit court's February 9, 2012 order. In its October 9, 2013 temporary order, the circuit court ordered both appellant and Bolinder to undergo a psychological examination by appellee at their own expense. In its February 27, 2014 order, the circuit court ordered appellant and Bolinder to submit themselves to monthly mediation sessions with appellee "to work toward the goal of learning how to have reasonable and respectful communications and the establishment of trust between the parties." Appellee was also referred to as a "counselor" in the order and the sessions were referred to as "counseling."
During a session on May 29, 2014, in response to appellant's question of why *454 Bolinder is the better custodial parent, appellee answered "[b]ecause you have a narcissistic personality disorder. I'm withdrawing the schizoid and going with narcissistic." This statement was made in Bolinder's presence. Appellant notified appellee by email that appellant had filed a complaint against appellee with the Arkansas Psychology Board (APB) on June 27, 2014.[1] Though there had been email correspondence between Bolinder and appellee regarding appellant's interactions with I.J. prior to June 27, 2014, there began to be email correspondence between Bolinder's attorney, Kristin Pawlik, and appellee thereafter. Pawlik and appellee's email correspondence dealt with the effect of appellant's complaint on the sessions and whether the sessions "[had] accomplished anything."
According to one October 16, 2015 email from appellee to Pawlik, the APB "[had] warned [him] to have no further involvement" with the case, appellant, or Bolinder. Appellee further informed Pawlik that "[w]hile [the APB had] not substantiated any of [appellant's] accusations against [appellee], they have determined that [appellee] was engaged in a 'multiple relationship' by acting as an evaluator and then a therapist. [He was] supposed to be one or another, not both." Appellee advised that further contact could result in suspension of his license, which he could not afford, so he would not be able to testify at the upcoming hearing.
On January 6, 2016, a consent agreement with letters of reprimand from the APB was filed against appellee. It found that
[Appellee] did admittedly engage in violations of [American Psychological Association (APA) ] Ethical Standard 3.10(d) [ (Informed Consent) ] and 10.01(a)[ (Informed Consent to Therapy) ]. [Appellee] has not admitted violating APA Ethical standard 3.05(a) [ (Multiple Relationships) ]. The admitted actions constituted violations of the forgoing enumerated Statutory, Regulatory, and APA Ethical Standards. The Board agrees to treatment of the allegation of an APA Ethical Standard 3.05(a) as a non-admission by the [appellee] even though it believed there was also probable cause for a finding of a violation of that 3.05(a) Standard.
Appellee was then sanctioned with a letter of reprimand for the admitted violations; a fine of $ 2,000.00; and six hours of face-to-face continuing education "pertaining to psychological ethics with particular incorporation of issues involving Multiple Relationships and Informed Consents."
Appellant filed a complaint in circuit court against appellee on January 14, 2016, seeking damages for medical negligence, breach of fiduciary duty, breach of contract, and breach of confidentiality. Appellee answered on February 11, 2016. He admitted that the circuit court "clearly explained the role of [appellee] in carrying out" its orders, that "any 'position' [appellee] took was a direct result of a fair and impartial review of the information provided by [appellant] and Bolinder during [appellee's] four meetings with [appellant] and Bolinder"; that he "did not have documentation of informed consent or a treatment plan with [appellant]"; and that he owed appellant a fiduciary duty as well as a duty of confidentiality, though he denied breaching those duties. He invoked the doctrine of comparative fault. While he specifically sought to have appellant's claims barred through the doctrines of *455 waiver, estoppel or statute of limitations, or to be dismissed for failure to state a claim, he only generally stated that he "assert[ed] each and every affirmative defense set forth in [Arkansas Rule of Civil Procedure] 8." Immunity was not raised in appellee's answer.
Appellant filed his first amended complaint on September 27, 2016, in which he added causes of action for the tort of outrage, deceit, defamation, invasion of privacy, and civil conspiracy. Appellee answered on October 19, 2016, denying all material allegations therein.
Appellee filed his amended motion for summary judgment on May 11, 2017. Outlining the four factors listed in Chambers v. Stern ( Chambers I ),[2] all of which he asserted he met, he argued that he was entitled to summary judgment because he was entitled to judicial immunity.[3] Furthermore, he expressly stated that appellant knew the joint sessions with Bolinder and his report were not confidential because appellee so informed appellant. Appellant responded in opposition to appellee's motion and amended motion on May 24, 2017. On the same date, he also filed his response to appellee's statement of undisputed facts and filed his own statement of facts in support of his response to appellee's motion for summary judgment and amended motion for summary judgment.
Appellee filed his reply to appellant's response to his amended motion for summary judgment and his response to appellant's statement of facts in support of his response on June 14, 2017. A hearing on appellee's motion for summary judgment was held on July 18, 2017, at the conclusion of which the circuit court made the following oral findings:
[Appellee's] interactions with [appellant] were directly related to or during the court-ordered joint therapy sessions and evaluation, acting as a psychologist at all times. He was officially appointed by the Benton County Circuit Court and the acts that are being complained over were carried out within the scope of the Court's appointment so I'm going to grant summary judgment on that issue.
Its September 6, 2017 order was virtually identical with the addition of the language that "As such, [appellee] is covered under the doctrine of judicial immunity. Accordingly, it dismissed the matter with prejudice." This timely appeal followed.
A circuit court may grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law.[4] Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[5] After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from those undisputed facts.[6] On appeal, we determine if *456 summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered.[7]
This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.[8] The burden is not on the moving party to demonstrate that every fact is undisputed, but to show that reasonable minds could not differ as to the conclusion to be drawn from them.[9]
Judicial immunity is absolute immunity.[10] Whether immunity from suit exists is a question of law for the courts.[11] We review questions of law de novo, as the circuit court is in no better position than we are to answer a question of law.[12]
Appellant argues that appellee is not entitled to immunity for acts that exceed the scope of his appointment. There is limited caselaw on judicial immunity.
In Robinson v. Langdon , our supreme court adopted the United States Supreme Court's test for judicial immunity, which looked to whether the seeker of judicial immunity "share[d] enough of the characteristics of the judicial process that those who participate" that they should be immune from suits for damages.[13] ,[14] The Robinson court went on to note the following factors as characteristics of the judicial process to be considered in determining absolute immunity: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.[15]
In Chambers v. Stern ( Chambers I ) -a case similar to the one now before this court that it involved a physician who was appointed to assist in evaluating custody and visitation issues[16] -our supreme court held that "[t]he rationale behind judicial immunity is to maintain an independent and impartial judiciary." [17]
*457 It stated that "[w]hen a public officer is granted discretion and empowered to exercise his independent judgment, like a judge, he becomes a quasi-judicial officer and may enjoy judicial immunity when he is acting within the scope of his authority.[18] The Chambers I court reasserted the six-factor test adopted in Robinson to be considered in determining absolute immunity. It also noted that "[p]ublic policy considerations also compel us to extend judicial immunity to court-appointed therapists" as "[p]sychologists and other experts would be reluctant to accept appointments if they were subject to personal liability for actions taken in their official capacities."[19]
In dicta, the Chambers I court noted that "in Doe , the plaintiffs could not overcome the therapist's immunity by merely asserting that she was not a good psychologist, or that she should have been a better psychologist"[20] because "(1) there was no showing that the psychologist was not functioning as a psychologist at all relevant times, (2) the plaintiffs agreed to participate in counseling and selected the therapist, (3) the therapist was officially appointed by the court, and (4) the acts of which the plaintiffs complained were carried out within the scope of the court-appointed capacity."[21] The Chambers I court then held that "a court-appointed physician is entitled to judicial immunity so long as he is serving an integral part of the judicial process, by carrying out and acting within the scope of a court's order."[22] The matter was remanded for the circuit court to "determine as a matter of law whether Dr. Stern's actions were within the scope of his court-appointed capacity, and if so, his actions taken pursuant to the appointment are entitled to judicial immunity."[23] The circuit court determined that Dr. Stern's actions were within the scope of his court-appointed capacity and that he was entitled to judicial immunity on remand and our supreme court affirmed its ruling on appeal.[24] There is no caselaw defining what it means to "act within the scope" of an appointment or to exceed said scope.
The facts in the case before us are that the circuit court appointed appellee to perform a psychological examination of appellant and Bolinder and to conduct monthly mediation sessions with them, referring to appellee as a "counselor" in the order and the sessions were referred to as "counseling." Said counseling was agreed to by the parties. All interaction with appellee between any party and appellee was in his role as "counselor." These meet the four factors listed in Chambers I and therefore support the circuit court's determination that appellee was acting within the scope of his appointment. Contrary to appellant's wishes, as noted in Chambers I , we are not at liberty to waive appellee's judicial immunity simply because he may have not been a good therapist, a subject on which we decline to opine.
Based on the holdings in Chambers I , which included the promulgation of a four-factor *458 test,[25] and the facts in this case, we find no error in the circuit court's ruling and affirm.
Affirmed.
Abramson and Klappenbach, JJ., agree.

According to the timeline, appellant asserted that he initially mailed his complaint to the APB on June 27, 2014, but it returned "several weeks later as undeliverable." The complaint form received by the APB is dated December 10, 2014

338 Ark. 332, 338, 994 S.W.2d 463, 466 (1999) (citing Doe v. Hennepin Cty. , 623 F.Supp. 982, 986-97 (D. Minn. 1985) ).

He also asserted twelve bases for summary judgment; however, they are not relevant to the point on appeal.

Blevins v. Hudson , 2016 Ark. 150, at 3, 489 S.W.3d 165, 168 (citing Hotel Assocs., Inc. v. Rieves, Rubens & Mayton , 2014 Ark. 254, 435 S.W.3d 488 ).

Id. at 4, 489 S.W.3d at 168 (citing Davis v. City of Blytheville , 2015 Ark. 482, 478 S.W.3d 214 ).

Jackson v. Sparks Reg'l Med. Ctr. , 375 Ark. 533, 539, 294 S.W.3d 1, 4 (citing Sykes v. Williams , 373 Ark. 236, 239-40, 283 S.W.3d 209, 212-14 (2008) ).

Id.

Blevins , supra (citing Lipsey v. Giles , 2014 Ark. 309, 439 S.W.3d 13 ).

Id. (citing Early v. Crockett , 2014 Ark. 278, 436 S.W.3d 141 ).

Robinson v. Langdon , 333 Ark. 662, 669, 970 S.W.2d 292, 295 (1998) (citing McCrory v. Johnson , 296 Ark. 231, 755 S.W.2d 566 (1988) ).

Fleming v. Vest , 2015 Ark. App. 636, at 9, 475 S.W.3d 576, 582 (citing Chambers v. Stern , 338 Ark. 332, 338, 994 S.W.2d 463, 466 (1999) ).

Id. (citing Curley v. Old Reliable Cas. Co. , 85 Ark. App. 395, 155 S.W.3d 711 (2004) ).

333 Ark. at 669, 970 S.W.2d at 296.

In Robinson , a Department of Human Services (DHS) hearing officer had been sued after a former child-care facility worker's name was removed from DHS's registry of child abusers. The officer had determined the allegations to be "founded[,]" but her decision was overturned by the agency.

333 Ark. at 670, 970 S.W.2d at 296 (citing Cleavinger v. Saxner , 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) ; Butz v. Economou , 438 U.S. 478, 512-13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) ).

The therapist had been appointed to "meet, evaluate, and counsel Chambers, his minor children, and his former wife, throughout the divorce proceedings." Chambers I , 338 Ark. at 334, 994 S.W.2d at 464.

Id. at 336, 994 S.W.2d at 465 (citing 48A C.J.S. § 86 (1981 & Supp. 1999)).

Id. (citing 46 Am. Jur. 2d § 70 (1994 & Supp. 1999)).

Id. at 338, 994 S.W.2d at 466 (citing Doe , 623 F.Supp. 982, 986 ).

Id. (citing Doe , 623 F.Supp. 982 ).

Id. (citing Doe , 623 F.Supp. at 986-87 ).

Id.

Id. at 338-39, 994 S.W.2d at 466.

See Chambers v. Stern (Chambers II) , 347 Ark. 395, 409, 64 S.W.3d 737, 746 (2002).

The six-factor Robinson test was not overturned.