Cite as 2019 Ark. 232
# SUPREME COURT OF ARKANSAS
No. CV-18-813

| | Opinion Delivered: June 20, 2019 |
|---|---|
| MERANDA MARTIN, SUCCESSOR SPECIAL ADMINISTRATRIX OF THE ESTATE OF VIRGIL BROWN, JR., DECEASED<br><br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60CV-13-4061] |
| V.<br><br>DR. LESLIE SMITH<br><br>APPELLEE | HONORABLE MACKIE M. PIERCE, JUDGE<br><br>AFFIRMED; COURT OF APPEALS OPINION VACATED. |

**SHAWN A. WOMACK, Associate Justice**

Meranda Martin, on behalf of her deceased father's estate, appeals the circuit court's order granting summary judgment to Dr. Leslie Smith based on quasi-judicial immunity. Because the underlying suit seeks to hold Dr. Smith liable for his performance of functions integral to the judicial process, we hold he is entitled to quasi-judicial immunity for those actions and therefore affirm.

## I. *Background*

In the early hours of November 30, 2011, Kenneth McFadden brutally stabbed Virgil Brown, Jr., to death in the apartment they shared. At the time of the murder, McFadden was in custody of Greater Assistance to Those in Need, Inc. ("Gain"), as part of

his conditional release under Act 911 of 1989. *See* Ark. Code Ann. § 5-2-315 (Repl. 2013). Under the terms of the conditional release order, McFadden was also receiving psychiatric treatment provided by Gain's medical director, board-certified psychiatrist Dr. Leslie Smith.

McFadden had been on conditional release since 2004.[1] That year, McFadden was acquitted of third-degree battery, second offense, by reason of mental disease or defect. He was subsequently diagnosed with schizophrenia and conditionally released under Act 911. The controlling order at the time of Brown's murder released McFadden into Gain's custody for the purpose of receiving his prescribed treatment for schizophrenia. The order named Gain as the responsible agency for monitoring McFadden's compliance with his prescribed treatment regimen. McFadden was ordered to comply with the prescribed regimen and was required to have regular personal contact with an Act 911 compliance monitor to verify compliance. The monitor was required to periodically inform the circuit court of McFadden's compliance with the terms of release.

Act 911 also imposes responsibilities on the "person ordered to be in charge" of the prescribed treatment regimen. Ark. Code Ann. § 5-2-315(e). As relevant here, that person was required to: (1) provide McFadden with the prescribed treatment regimen; (2) submit periodic written documentation to the Act 911 monitor regarding McFadden's compliance with the regimen; and (3) submit written notice of McFadden's failure to comply with the

---

[1]The conditional release was revoked from October 2006 until September 2007. From then, McFadden remained on conditional release until the 2011 murder.

2

regimen to the Act 911 monitor, the attorneys involved in the case, and the circuit court. *Id.* The conditional release order commanded Gain to carry out these duties, rather than a specific person as contemplated by the statutory language of Act 911. Dr. Smith carried out these responsibilities by serving as McFadden's treating physician and informing the circuit court of McFadden's condition and compliance with the prescribed regimen.

Meranda Martin, Brown's daughter, filed the underlying action against Dr. Smith on behalf of her father's estate. Martin claimed that Dr. Smith's alleged failure to provide adequate treatment to McFadden rendered him liable for her father's death. Dr. Smith asserted absolute quasi-judicial immunity and moved for summary judgment. The circuit court found that Dr. Smith was entitled to immunity because his treatment and medical care of McFadden arose solely from the conditional release order and was within the scope of that order. The circuit court further held that Martin failed to meet proof with proof and did not refute Dr. Smith's assertion of immunity. Martin's complaint against Dr. Smith was dismissed with prejudice as a matter of law. This appeal followed.

## II. *Standard of Review*

The Arkansas Court of Appeals initially considered Martin's appeal. *See Martin v. Smith*, 2018 Ark. App. 452, 560 S.W.3d 787. With a 5-1 majority, that court affirmed the circuit court's decision and concluded that Dr. Smith was entitled to quasi-judicial immunity under *Chambers v. Stern*, 338 Ark. 332, 994 S.W.2d 463 (1999). We granted Martin's petition for review and now consider this appeal as though it was originally filed in this court. *See Dachs v. Hendrix*, 2009 Ark. 322, at 2, 320 S.W.3d 645, 646.

3

Summary judgment is appropriate only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *See Stokes v. Stokes*, 2016 Ark. 182, at 8-9, 491 S.W.3d 113, 120. In reviewing a grant of summary judgment, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* A grant of summary judgment based on a party's immunity from suit is purely a question of law and is reviewed de novo on appeal. *See Repking v. Lokey*, 2010 Ark. 356, at 5, 377 S.W.3d 211, 216.

III. *Discussion*

Quasi-judicial immunity, as its name suggests, evolved out of the settled doctrine of judicial immunity. The rationale behind judicial immunity is to maintain an independent and impartial judiciary by ensuring that judges may carry out judicial functions without harassment or intimidation. *See Chambers*, 338 Ark. at 336, 994 S.W.2d at 465. Judges are accordingly entitled to absolute immunity from suit for actions taken in the execution and within the scope of their judicial duties. *See Peterson v. Judges of Jefferson Cty. Cir. Ct.*, 2014 Ark. 228, at 4.

The fair administration of justice does not rely exclusively on judges, however, and certain nonjudicial actors are often indispensable to achieving that goal. For that reason, quasi-judicial immunity has been extended to nonjudicial actors who perform certain

4

functions intimately related to the judicial process. *See Chambers*, 338 Ark. at 337, 994 S.W.2d at 465. We have generally recognized that quasi-judicial immunity may apply in two ways. First, when a public officer is granted discretionary authority to exercise their independent judgment, much like a judge, they become a "quasi-judicial officer" entitled to immunity for acts within the scope of their authority. *See Blevins v. Hudson*, 2016 Ark. 150, at 4, 489 S.W.3d 165, 168. Second, a nonjudicial actor serving an integral part of the judicial process by carrying out and acting within the scope of the court's order may also assert quasi-judicial immunity. *See Chambers*, 338 Ark. at 337-38, 994 S.W.2d at 466. Here, our inquiry is focused on the second category.

We first recognized that absolute quasi-judicial immunity may apply to physicians under a functional analysis in *Chambers v. Stern*. In *Chambers*, we held that a court-appointed psychiatrist was entitled to quasi-judicial immunity for actions within the scope of his appointment in a divorce case. *Id.* The psychiatrist had been ordered to evaluate and treat the parties and their children throughout the proceedings and report his findings, observations, and recommendations to the court. *Id.* at 334, 994 S.W.2d at 464. In determining whether quasi-judicial immunity applied, we focused on the nature of the function performed and not on the identity or title of a particular actor. *Id.* at 337-38, 994 S.W.2d at 466. We explained that by carrying out and acting within the scope of a court order, the physician effectively functions as an arm of the court and thus serves an integral part of the judicial process. *Id.* Any action within the scope of the court's order was consequently entitled to absolute immunity coextensive with that accorded judges. *Id.*

Unlike the physician in *Chambers*, Dr. Smith was not appointed by the court to provide the psychiatric treatment mandated by McFadden's conditional release order. Martin contends this distinction is dispositive and precludes Dr. Smith's entitlement to quasi-judicial immunity. The principles underlying our decision in *Chambers*, however, do not support such a narrow interpretation of the functional analysis. Rather, the decisive question is whether Dr. Smith was serving an integral part of the judicial process by carrying out and acting within the scope of McFadden's conditional release order. This is especially true where, as here, the court orders an agency to carry out the terms of the order rather than a specific individual. Because those functions must naturally be carried out by an individual, quasi-judicial immunity may extend to the individual under some circumstances.

Other jurisdictions have similarly recognized that the immunity analysis does not turn on whether the party asserting immunity was specifically designated by court order. The linchpin of the analysis hinges instead on the function performed and its integral relation to the judicial process. In *LaLonde v. Eissner*, the Massachusetts high court addressed a similar issue as presented here. 539 N.E.2d 538 (Mass. 1989). In that case, the lower court ordered the probation department to arrange a psychiatric evaluation in a child visitation case. Under that order, the department selected a psychiatrist who provided the department with a written report of his findings and testified at court. The *LaLonde* court held that the psychiatrist was entitled to immunity "because of the function he performed and its essential connection to the judicial process." *Id.* at 541-42 (citing

*Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir. 1987)). The fact that the psychiatrist "was not specifically designated by the judge's order, but rather by the probation department acting pursuant to a court order" did not impact the court's decision. *Id.*; *see also Howard v. Drapkin*, 271 Cal. Rptr. 893, 899 (Cal. Ct. App. 1990) (immunity may apply to "persons whose work product comes into the judicial process to be used by the court even though they were not court-appointed"); *Lavit v. Super. Ct.*, 839 P.2d 1141, 1144 (Ariz. Ct. App. 1992) (psychologist chosen by parties without court involvement entitled to immunity); *Karen L. v. Alaska Dep't of Health and Social Servs.*, 953 P.2d 871 (Alaska 1998) (same). Similarly, courts have determined that individuals carrying out court-ordered duties assigned to the organization they worked for were entitled to quasi-judicial immunity if their acts were an integral part of the judicial process. *See, e.g.*, *Greywolf v. Carroll*, 151 P.3d 1234, 1247 (Alaska 2007); *Nave v. Feinberg*, 539 S.W.3d 685, 691 (Ky. Ct. App. 2017); *Coverdell v. Dep't of Social and Health Servs.*, 834 F.2d 758, 765 (9th Cir. 1987) (child protective services worker accorded immunity for carrying out court-ordered agency removal).

As we discussed above, Dr. Smith's treatment of McFadden expressly arose from the conditional release order. Although Dr. Smith was not specifically identified in the order, he carried out Gain's court-ordered treatment and reporting obligations as the organization's medical director and McFadden's treating physician. Moreover, he clearly communicated with the court at various times to report McFadden's condition and compliance with the court-ordered treatment regimen. Dr. Smith was also copied as the

7

treating "GAIN Psychiatrist" on multiple letters submitted to the court relating to McFadden's conditional release. The circuit court was clearly made aware that Dr. Smith was the individual responsible for carrying out its orders and was the "person . . . in charge" of McFadden's prescribed regimen, as required by Act 911 at Section 5-2-315(e). Further, Dr. Smith's report of McFadden's failure to comply could result in the revocation of his conditional release and thus plays a key role in the judicial process. *See* Ark. Code Ann. § 5-2-315(e)(3)(C). Accordingly, to the extent Dr. Smith's actions fell within the scope of the court's order—and we agree with the circuit court that they did—he is entitled to quasi-judicial immunity.

Given the absolute nature of quasi-judicial immunity, we emphasize that it only applies to actors who serve an *integral* function to the judicial process and only for actions within the scope of a court's order. As we recognized in *Chambers*, the judiciary often depends on the services of physicians to carry out functions essential to the administration of justice. *See Chambers*, 338 Ark. at 337-38, 994 S.W.2d at 465-66. We acknowledged that without the protections of immunity, these experts may be reluctant to accept the risk of liability. *Id.* This is especially true in cases involving the diagnosis and treatment of mental illness and the prediction of future behavior. *See Seibel v. Kemble*, 631 P.2d 173, 176-77 (Haw. 1981). In this case, Dr. Smith clearly served an integral role to the judicial process and we accordingly hold that he is entitled quasi-judicial immunity.

Affirmed; court of appeals opinion vacated.

HART and WYNNE, JJ., dissent.

8

ROBIN F. WYNNE, Justice, dissenting. I would reverse the circuit court's grant of summary judgment to appellee on the basis of quasi-judicial immunity and remand for further proceedings. Therefore, I respectfully dissent.

On this record, appellee is not entitled to immunity. As the majority opinion recounts, Kenneth McFadden was released from the Arkansas State Hospital pursuant to a conditional release order and, ultimately, Gain was named "the responsible agency for monitoring [his] compliance to his prescribed medication and treatment regimen." Appellee, a psychiatrist, is the director of Gain. As such, he was McFadden's treating physician, responsible for the long-term (up to five years) treatment of McFadden for schizophrenia.

The law in Arkansas regarding quasi-judicial immunity is not well-developed. In the seminal case, *Chambers v. Stern*, 338 Ark. 332, 994 S.W.2d 463 (1999), this court held that a court-appointed physician providing evaluation and therapy services in a divorce case was entitled to absolute immunity for acts within the scope of the court's appointment. The case at bar presents an opportunity to clarify and limit the holding in *Chambers*. I would draw a distinction between providing treatment and providing evaluations or recommendations to a court:

> [T]reatment, unlike reports or evaluations and recommendations, is not intimately related and essential to the judicial decision-making process. Rather, it is a separate remedial function in which full disclosure may be contrary to the best interests of the patient and improper. *See Ethical Principles of Psychologists*, American Psychologist 390, 392 (March 1990) ("Principle 5: Confidentiality. Psychologists have a primary obligation to respect the confidentiality of information obtained

9

from persons in the course of their work as psychologists. They reveal such information to others only with the consent of the person.").

Further, the focus of the psychologist in performing evaluations, providing reports, and making recommendations is not necessarily on the best interests of the subject being evaluated or any one of the parties involved in the litigation, but on aiding the court to separate truth from falsity. In contrast, the focus of the therapist in treatment is solely on the best interests of the patient. The need for absolute immunity for treatment is therefore not as compelling as the need for immunity for evaluations and recommendations.

In addition, a party claiming to be aggrieved by an evaluation or recommendation has the opportunity to challenge the expert's opinion during the litigation. There is no similar opportunity to rectify harm caused during treatment.

*Awai v. Kotin*, 872 P.2d 1332, 1336 (Colo. App. 1993) (citations omitted).

Here, the record reveals that appellee was acting as McFadden's treating psychiatrist; he was not "acting as an arm of the court and performing a quasi-judicial function." *Chambers*, 338 Ark. at 338, 994 S.W.2d at 466. Therefore, he was not entitled to absolute immunity from suit, and I respectfully dissent.

HART, J., joins.

*Bennie O'Neil*, for appellant.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Mark D. Wankum*, for appellee.