Cite as 2020 Ark. 105

# SUPREME COURT OF ARKANSAS

No. CV-17-862

| | | |
|---|---|---|
| | | **Opinion Delivered:** March 12, 2020 |
| J. DAVID JOHN | | |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-16-106] |
| V. | | |
| | | HONORABLE JOHN THREET, JUDGE |
| MARTIN T. FAITAK, PH.D. | | |
| | APPELLEE | REVERSED AND REMANDED; COURT OF APPEALS' OPINION VACATED. |

**JOSEPHINE LINKER HART, Associate Justice**

J. David John (John) filed suit against Dr. Martin T. Faitak (Faitak) in the Washington County Circuit Court. John's amended complaint alleged claims of medical negligence, breach of fiduciary duty, breach of contract, breach of confidentiality, outrage, deceit, defamation, invasion of privacy, and civil conspiracy. The claims concerned psychological and counseling treatment Faitak administered to John and Megan Bolinder (Bolinder), who were parties to a custody case in Benton County. Faitak filed a motion for summary judgment on each of John's claims, arguing that he was entitled to quasi-judicial immunity. The circuit court granted Faitak's motion for summary judgment, and John appealed. The court of appeals affirmed. *John v. Faitak*, 2019 Ark. App. 215. John filed a petition for review in this court, which we granted. On review, we hold that Faitak is not entitled to quasi-judicial immunity in this case. Accordingly, we reverse the decision of the

circuit court, vacate the court of appeals' opinion, and remand this case to the circuit court for further proceedings.

In 2013, John and Bolinder, who never married, were litigating the custody of their minor child in the Benton County Circuit Court. On October 9, 2013, the Benton County Circuit Court entered an order appointing Faitak to perform psychological examinations of both John and Bolinder. After the examinations took place, Faitak testified at a hearing in the Benton County Circuit Court that the "major problem" is "their lack of trust with each other," and recommended that John and Bolinder "meet with each other on a regular basis with somebody trained to deal with conflict situations." On February 27, 2014, the Benton County Circuit Court entered another order providing that John and Bolinder would submit to "mediation sessions" with Faitak. The relevant terms of this order are as follows:

> 12. Both parties shall submit themselves to monthly mediation sessions with Dr. Faitak to work toward the goal of learning how to have reasonable and respectful communications and the establishment of trust between the parties. The parties shall each be one-half responsible for the costs of said counseling. Should Dr. Faitak indicate he is unable or unwilling to engage the parties in counseling, the parties shall notify the Court and the Court will select a different counselor.

After this order was entered, John and Bolinder submitted to four joint-therapy sessions with Faitak between March and May 2014.

What allegedly occurred over the course of these sessions is the basis for this lawsuit. John's complaint alleges a conspiracy involving Faitak, Bolinder, and Bolinder's counsel. John alleges that Faitak "accepted and acted on ex parte communications" from Bolinder's

2

counsel, that those communications constituted an improper attempt to leverage or broker a settlement in the custody case, and that Faitak lied to John about whether any such communications occurred and what the contents of any such communications would have been. John also alleges that Faitak diagnosed John with narcissistic personality disorder and that Faitak disclosed that diagnosis in front of Bolinder during one of the joint sessions—without ever having established any confidentiality parameters. The gist of the lawsuit is that Faitak was biased and improperly favored Bolinder over John by (among other things) giving John a "bogus" individual diagnosis and communicating that diagnosis to Bolinder. The question before this court is whether any potential liability for these allegations would be barred by quasi-judicial immunity.

A grant of summary judgment based on a party's immunity from suit is reviewed de novo on appeal. *Repking v. Lokey*, 2010 Ark. 356, at 5, 377 S.W.3d 211, 216. This court has held that "a court-appointed physician is entitled to judicial immunity so long as he is serving an integral part of the judicial process, by carrying out and acting within the scope of a court's order." *Chambers v. Stern*, 338 Ark. 332, 338, 994 S.W.2d 463, 466 (1999) (*Chambers I*). Importantly, the immunity afforded by an appointment order does not extend to any and all actions that might be undertaken by the appointed individual; if at some point the appointee's acts exceed the scope of the order, then quasi-judicial immunity for those acts is "forfeited." *Id.* at 339, 994 S.W.2d at 466. In *Martin v. Smith*, we "emphasize[d]" that judicial immunity is available to court-appointed individuals "only for actions within the scope of a court's order." 2019 Ark. 232, at 8, 576 S.W.3d 32, 37.

3

Here, John's complaint levies a number of claims against Faitak, with varying degrees of evidentiary support. As set forth above, quasi-judicial immunity extends only to acts within the scope of a court's order. Many of the facts are not in dispute. To the extent other facts are in dispute, we must view those in the light most favorable to John. *Flentje v. First Nat. Bank of Wynne*, 340 Ark. 563, 569, 11 S.W.3d 531, 535 (2000). The question is whether the facts so construed entitle Faitak to quasi-judicial immunity, as a matter of law. *See Kahle v. Leonard*, 577 F.3d 544, 549-50 (8th Cir. 2007) ("On this appeal from the order denying Malone's motion for summary judgment, we do not have jurisdiction to decide, for example, whether there is sufficient evidence for a jury to find that Kahle did not consent to the sexual contact with Leonard. But we do have jurisdiction to decide whether, assuming that all of the facts alleged by Kahle are true, Malone is entitled to qualified immunity as a matter of law."). In this case, the alleged acts upon which John's claims are based are beyond the scope of the appointment order, so quasi-judicial immunity does not apply.

Unlike, for example, *Chambers II*, in which the lower court had determined that the appointee's actions were within the scope of the appointment order and this court affirmed because there was "no proof to the contrary" (*Chambers v. Stern*, 347 Ark. 395, 409, 64 S.W.3d 737, 746 (2002) (*Chambers II*)), here, Faitak acknowledged in his deposition that at least some of the acts John complains of did occur and did exceed the scope of the appointment order. Faitak denied other acts alleged by John but acknowledged that those alleged acts *would be* outside the scope of the appointment order if they actually occurred.

4

By the terms of the appointment order, Faitak's charge was to facilitate effective communication and trust between John and Bolinder through joint counseling sessions. Faitak acknowledges that neither diagnosing John individually nor disclosing any such diagnosis to Bolinder was part of his charge or reason for involvement in the custody case.[1] He also acknowledges that the individual diagnosis he gave to John would be appropriately administered in an individual-therapy setting and that such a diagnosis would typically be confidential.

An individual diagnosis was not within the scope of the appointment order, so quasi-judicial immunity does not extend to claims related to that diagnosis. It follows that any breach of confidentiality related to that individual diagnosis would also be outside the bounds of quasi-judicial immunity.

The same is true of the alleged conspiracy (which Faitak denies) to leverage or broker a settlement in Bolinder's favor. Faitak acknowledges that Bolinder's counsel provided him with settlement terms and asked that he present those terms to John and Bolinder as though they were his idea. He acknowledges that "there was a degree of manipulation in that," and he acknowledges that brokering any sort of settlement would be outside the scope of what he was appointed to do in the custody case. He acknowledges that he told John he had "no contact" with Bolinder's counsel when John asked about it,

---

[1]Faitak acknowledged as much with respect to Bolinder as well. Moreover, at the summary judgment hearing below, John's attorneys pointed out that Faitak submitted a custody evaluation of John to the Benton County Circuit Court in the custody case but did not submit an evaluation of Bolinder.

except perhaps a discussion regarding the bill, and that this statement to John was false. Faitak maintains that none of his actions, including the individual diagnosis he gave to John, was in response to acts by Bolinder or her counsel. However, Faitak acknowledges that John would have cause to be "suspicious" about the matter.

As a matter of law, Faitak is not entitled to quasi-judicial immunity in this case. John's claims go well beyond simply alleging that Faitak was "not a good therapist." *Chambers II*, 347 Ark. at 399, 64 S.W.3d at 740. The conspiracy John alleges would certainly exceed the scope of the appointment order.

John's claims against Faitak concern alleged acts that were outside the scope of the appointment order, so liability for those acts is outside the bounds of quasi-judicial immunity.[2] We reverse the circuit court's order granting Faitak's motion for summary judgment, vacate the Court of Appeals' opinion, and remand this case to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded; court of appeals' opinion vacated.

WOMACK, J., concurs in part and dissents in part.

BAKER and HUDSON, JJ., dissent.

---

[2]As a final note, one should not be confused by the dissent—our decision today does not reflect any change in the law. The rule for quasi-judicial immunity remains the same: a court-appointed physician is entitled to judicial immunity so long as he is serving an integral part of the judicial process by carrying out and acting within the scope of a court's order. Part of the analysis involves whether the appointee was serving an integral part of the judicial process, and part of the analysis involves whether the appointee's acts were within the scope of the court's order. In this case, the specific acts at issue are not within the scope of the court's order, so quasi-judicial immunity for those acts is not available.

SHAWN A. WOMACK, Justice, concurring in part and dissenting in part. I agree only with the majority's conclusion that Dr. Faitak is not entitled to quasi-judicial immunity. The Court's erroneous analysis omits the most significant requirement of the quasi-judicial immunity doctrine. That is, the requirement that a nonjudicial actor must serve an integral function to the judicial process. By ignoring this requirement, the majority eviscerates the purpose behind absolute quasi-judicial immunity by extending it to anyone acting within the scope of a court's order. This sweeping approach opens to the door to an unprecedented entitlement to absolute immunity.

The rationale for according absolute immunity to judicial officers is to maintain an independent and impartial judiciary. *See Chambers v. Stern*, 338 Ark. 332, 336, 994 S.W.2d 463, 465 (1999). Recognizing that nonjudicial actors are often indispensable toward achieving the fair administration of justice, we have extended absolute quasi-judicial immunity to those who perform certain functions intimately related to the judicial process. *See Martin v. Smith*, 2019 Ark. 232, at 5–6, 576 S.W.3d 32, 35. Still, absolute immunity is "strong medicine." *Forrester v. White*, 484 U.S. 219, 230 (1988) (citation omitted). And thus, it should extend only so far as is necessary to protect the judicial process. *See Burns v. Reed*, 500 U.S. 478, 492 (1991). Merely being "part of the judicial function," even an "extremely important" part, does not automatically entitle an individual to quasi-judicial immunity. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993). Indeed, even some tasks performed by judges themselves, "though they may be essential to the very functioning of the courts," are not shielded by judicial immunity. *See Forrester*, 484 U.S. at 228; *see also*

7

*Hall v. Jones*, 2015 Ark. 2, at 3–4, 453 S.W.3d 674, 676 (judicial immunity applies only to judicial act taken within the court's jurisdiction).

For that reason, the "linchpin of the [quasi-judicial immunity] analysis hinges . . . on the function performed and its integral relation to the judicial process." *Martin*, 2019 Ark. 232, at 6, 576 S.W.3d at 36. Of course, that is not the only requirement. An actor serving an essential function to the judicial process is entitled to immunity only for "carrying out and acting within the scope of a court order." *Id.* at 5, 576 S.W.3d at 36. But the ordered actions must still satisfy the functional requirement.

This approach is not new to Arkansas courts. Just last year, we "emphasize[d]" that quasi-judicial immunity applies only "to actors who serve an *integral* function to the judicial process and only for actions within the scope of a court's order." *Martin*, 2019 Ark. 232, at 8, 576 S.W.3d at 37 (emphasis in original). Curiously, the majority quotes this statement in *Martin* but omits the italicized "integral function" requirement. Yet, to conclude that absolute immunity attaches simply by acting within the scope of a court order, regardless of the relationship of those activities to the judicial function, would "lift form above substance." *Forrester*, 484 U.S. at 230. The majority's one-prong analysis would broadly grant the "strong medicine" of absolute immunity to any individual carrying out a court-ordered task, regardless of its judicial function or nature. This is an improper approach.

We must determine from the nature of Dr. Faitak's actions, not merely by his status as a court-appointed psychiatrist, whether he is entitled to absolute quasi-judicial immunity. *See, e.g.*, *Vaughan v. McLeod Reg. Med. Ctr.*, 642 S.E.2d 744, 748 (S.C. 2007). To be sure,

8

court-appointed psychiatrists perform integral judicial functions when providing psychological expertise in child custody suits like the one here. *See, e.g., Delcourt v. Silverman*, 919 S.W.2d 777, 782–83 (Tex. Ct. App. 1996); *Lythgoe v. Guinn*, 884 P.2d 1085, 1088 (Alaska 1994). But absolute quasi-judicial immunity should apply only when the expert provides information or assistance essential to the decision-making process. *Id.*

There is no doubt that the challenged actions in the case arose from the circuit court's order. The court ordered John and Bolinder to "submit themselves to monthly mediation sessions with Dr. Faitak to work toward the goal of learning how to have reasonable and respectful communications and the establishment of trust between the parties." But there was no judicial function served by this order. The court was not seeking Dr. Faitak's professional expertise to aid its decision-making process. Indeed, there was no longer a judicial decision to be made regarding the custody issue. In the same order, the court stated the only issues remaining were the "issue of child support modification" and the child's therapist bills. Otherwise, "all relief requested and not expressly granted [was] denied." Accordingly, Dr. Faitak's appointment was tied to the parties' perceived needs rather than the court's needs and was not related to any issue pending before the court. For that reason, I conclude that he was not entitled to absolute quasi-judicial immunity.

Under the majority's erroneous one-prong analysis, however, Dr. Faitak would be entitled to immunity. The majority's conclusion is premised only on its belief that Dr. Faitak's actions exceeded the scope of the court's order. To reach its decision, the Court relies on Dr. Faitak's testimony that his actions, both admitted and alleged, "did exceed the

9

scope of the appointment order." But a party's legal conclusions have never served as binding authority on this Court. As the Second Circuit has stated, "[t]he mere fact that an individual believed that her actions were sanctioned by court order is not sufficient to confer quasi-judicial immunity." *Gross v. Rell*, 695 F.3d 211, 217 (2d Cir. 2012). Conversely, the mere fact that an individual stated that his actions fell outside the scope of the court's order is not conclusive. These are legal decisions to be determined by the court.

The actions allegedly taken by Dr. Faitak undoubtedly arose from the court-ordered mediation sessions. Whether or not Dr. Faitak should have diagnosed John or announced the diagnosis in front of Bolinder is irrelevant to the immunity analysis. After all, "[q]uasi-judicial immunity would afford only illusory protection if it were lost the moment an officer acted improperly." *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 929 (8th Cir. 2020) (internal citation omitted). Dr. Faitak's professional sanctions are likewise irrelevant. *See Duff v. Lewis*, 958 P.2d 82, 87 (Nev. 1998). And contrary to the majority's assertion, "pleading a conspiracy does not affect absolute [quasi-judicial] immunity." *Moses v. Parwatikar*, 813 F.2d 891, 892–93 (8th Cir. 1987). John—and the majority—fail to point to a single act that falls outside the scope of the court's order. Dr. Faitak would thus be entitled to absolute immunity under the majority's flawed quasi-judicial immunity analysis.

I cannot join the court's opinion because it does not rely upon the correct standard for quasi-judicial immunity. Moreover, the majority misapplies the erroneous standard it sets forth. Therefore, I concur only in the judgment.

10

**KAREN R. BAKER, Justice, dissenting.** I must respectfully dissent because I would affirm the circuit court's grant of summary judgment to Dr. Faitak on the basis of quasi-judicial immunity.

In *Chambers v. Stern*, 338 Ark. 332, 337, 994 S.W.2d 463, 466 (1999), we held that "nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process have absolute immunity for damage claims arising from their performance of the delegated functions." *Id.* (quoting *Myers v. Morris*, 810 F.2d 1437, 1466–67 (8th Cir. 1987)). Further, we held that "a court-appointed physician is entitled to judicial immunity so long as he is serving an integral part of the judicial process, by carrying out and acting within the scope of a court's order." *Id.* at 338, 994 S.W.2d at 466. We cited *Doe v. Hennepin County*, 623 F. Supp. 982, 986 (D. Minn. 1985), for the proposition that a therapist's immunity cannot be overcome "by merely asserting that she was not a good psychologist, or that she should have been a better psychologist." *Id.*

In *Martin v. Smith*, 2019 Ark. 232, 576 S.W.3d 32, we reaffirmed *Chambers* in identifying that the decisive question is whether the psychiatrist was serving an integral part of the judicial process by carrying out and acting within the scope of the circuit court's order. We explained that

> [g]iven the absolute nature of quasi-judicial immunity, we emphasize that it only applies to actors who serve an integral function to the judicial process and only for actions within the scope of a court's order. As we recognized in *Chambers*, the judiciary often depends on the services of physicians to carry out functions essential to the administration of justice. *See Chambers*, 338 Ark. at 337–38, 994 S.W.2d at 465–66. We acknowledged that without the protections of immunity, these experts may be reluctant to accept the risk of liability. *Id.* This is especially true in cases

11

involving the diagnosis and treatment of mental illness and the prediction of future behavior. *See Seibel v. Kemble*, 631 P.2d 173, 176–77 (Haw. 1981).

*Id.* at 8, 576 S.W.3d at 37.

In the present case, the circuit court ordered the parties to submit themselves to monthly mediation sessions with Dr. Faitak "to work toward the goal of learning how to have reasonable and respectful communications and the establishment of trust between the parties. The parties shall each be one-half responsible for the costs of said counseling. Should Dr. Faitak indicate that he is unable or unwilling to engage the parties in counseling, the parties shall notify the Court and the Court will select a different counselor."

Here, John's complaints regarding Dr. Faitak stemmed from Dr. Faitak's role as John and Bolinder's counselor, which was precisely within the scope of the circuit court's order. The majority states that "here, Faitak acknowledged in his deposition that at least some of the acts John complains of did occur and did exceed the scope of the appointment order. Faitak denied other acts alleged by John but acknowledged that those alleged acts *would be* outside the scope of the appointment order if they actually occurred." In my view, it was not for Dr. Faitak to decide whether his actions fell outside the scope of the circuit court's order. Rather, such a legal determination is reserved for the courts. The majority also notes that "Faitak diagnosed John with narcissistic personality disorder and that Faitak disclosed that diagnosis in front of Bolinder during one of the joint sessions—without ever having established any confidentiality parameters." While this is an accurate statement, a

12

thorough review of the record demonstrates that Dr. Faitak revealed John's diagnosis only after being pressed by John to reveal whether he or Bolinder was the better custodial parent and why. The record also demonstrates that when questioned by John about Bolinder's diagnosis, Dr. Faitak stated that he had diagnosed Bolinder with major depressive disorder. Attached as an exhibit to John's statement of facts in support of his response to Dr. Faitak's motion for summary judgment was a transcript of the digital recording of the parties' May 29, 2014 session with Dr. Faitak. A careful review of the transcript demonstrates that in the same session wherein John's diagnosis was disclosed in front of Bolinder, Dr. Faitak also disclosed Bolinder's diagnosis in front of John. These disclosures were made in the presence of both John and Bolinder during the same counseling session as follows:

JOHN: So who is the better custodial parent?

DR. FAITAK: [Bolinder].

JOHN: Why?

DR. FAITAK: Because you have a narcissistic personality disorder. I'm withdrawing the schizoid and going with narcissistic.

. . . .

JOHN: What's [Bolinder's] diagnosis? What diagnosis would you give her?

DR. FAITAK: Oh, I already did. I said major depressive disorder. It's in the report.

Additionally, as to the lack of confidentiality, John admitted in his complaint with the APB against Dr. Faitak that "during our first session on March 5, 2014 we all acknowledged that

13

these sessions would be for use in court." Therefore, John conceded that the mediation sessions with Dr. Faitak were not confidential.

With regard to Dr. Faitak's alleged conspiracy to broker a settlement, I must note that any such attempt was clearly unsuccessful. Moreover, the circuit court's order stated that the monthly mediation sessions with Dr. Faitak were to work toward the goal of learning how to have reasonable and respectful communications and the establishment of trust between the parties. Thus, I cannot say that an attempt to broker a settlement resulted in Dr. Faitak exceeding the scope of the circuit court's order.

In addition to acting within the scope of the circuit court's order, Dr. Faitak was serving an integral part of the judicial process. Indeed, the circuit court's order specifically stated that "[s]hould Dr. Faitak indicate that he is unable or unwilling to engage the parties in counseling, the parties shall notify the Court and the Court will select a different counselor." Based on this language, the circuit court clearly contemplated further supervision of John and Bolinder. As part of its supervision, the circuit court ordered the parties to submit to mediation sessions with Dr. Faitak. However, the circuit court indicated that it would appoint a new counselor if Dr. Faitak was "unable or unwilling" to counsel the parties. Thus, as in *Martin*, *supra*, Dr. Faitak's counseling services were integral to the judicial process.

In my view, Dr. Faitak is entitled to quasi-judicial immunity because he was both acting within the scope of the circuit court's order and serving an integral part of the judicial process. Accordingly, I dissent.

HUDSON, J., joins in this dissent.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant.

*Dover Dixon Horne PLLC*, by: *Todd Wooten*, *Trey Cooper*, and *Monte D. Estes*, for appellee.